UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy Wayne MORROW (89–5418/5708) and George Mooneyham (89–5710), Defendants–Appellants.

Nos. 89–5418, 89–5708 and 89–5710.

United States Court of Appeals,
Sixth Circuit.

Reargued Feb. 12, 1992.

Decided Oct. 7, 1992.

**224**

James R. Dedrick, Asst. U.S. Atty. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Office of U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Anthony Philip Lomonaco (argued and briefed), Vaughan & Zuker, Knoxville, Tenn., for defendant-appellant George Mooneyham.

A. Benjamin Strand, Strand & Goddard, Edward C. Miller (argued & briefed), Dandridge, Tenn., for defendant-appellant Timothy Wayne Morrow.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

In a prior decision in this case, a three-member panel of this Court ruled that instructions defining the element of carrying a firearm "in relation to" a drug trafficking offense pursuant to 18 U.S.C. § 924(c) failed to inform the jury that the crime required proof of a relationship between the weapon and the drug offense. It therefore reversed defendant Mooneyham's conviction on that count and vacated defendant Morrow's conviction for aiding and abetting Mooneyham in a 924(c) violation. *United States v. Morrow*, 923 F.2d 427 (6th Cir.1991). A majority of the Court voted for rehearing of the case en banc, thereby vacating the previous opinion and judgment of the original panel. 932 F.2d 1146 (6th Cir.1991).

Agents of the United States Forest Service discovered Timothy Wayne Morrow and George Mooneyham enter a marijuana patch and commence cutting marijuana plants. Mooneyham wore a sidearm. When confronted by the agents, Morrow was promptly apprehended while Mooneyham fled. Morrow was advised of his constitutional rights and told agents that he and Mooneyham were removing the male marijuana plants to facilitate the protection of tetrahydrocannabinol in the female plants.

When Mooneyham was arrested about thirty minutes later, his holster was empty. A loaded .22 caliber gun was subsequently found near the entry to the marijuana field.

A jury convicted Mooneyham and Morrow of aiding and abetting one another in the unlawful manufacture of marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. Mooneyham and Morrow also were found guilty of conspiring to manufacture marijuana in violation of 21 U.S.C. § 846. In addition, the jury found that Mooneyham, aided and abetted by Morrow, knowingly carried a firearm during and in relation to a drug trafficking offense in breach of 18 U.S.C. § 924(c)(1).

Morrow received a sentence of sixty-three months imprisonment for the manufacturing and conspiracy offenses. Mooneyham's sentence on the manufacturing and conspiracy counts was thirty-seven months imprisonment. As for the firearm convictions, Morrow and Mooneyham each received the mandatory five-year sentence set forth in 18 U.S.C. § 924(c)(1), to be served consecutively.

Defendants have raised various assignments of error. After careful review, the Court concludes that none has merit. The judgment of the district court is affirmed.

I

The following colloquy between the prosecutor and an arresting agent took place during the trial:

Q. Did Mr. Morrow tell you anything further?

A. In response to a question by another officer he indicated how they had learned some of the business about growing marijuana.

Mr. Santore [Mooneyham's counsel]: Objection to what they, your Honor please. May we have a side bar with your Honor.

The Court: Well, overruled. It's admissible.

Q. Just testify about what Mr. Morrow told you.

A. He indicated they had learned, that he had learned information about growing marijuana from books such as High Times, magazines such as High Times.

■ Mooneyham's first argument is that the admission of Morrow's incriminating statements regarding what "they" did resulted in a violation of Mooneyham's rights under the Confrontation Clause of the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In *Bruton*, the Supreme Court held that in joint trials hearsay attributed to one nontestifying codefendant incriminating another codefendant may violate the latter's Sixth Amendment rights. The risk is that the jury might rely on the extrajudicial statements to convict, even though such statements have not been subjected to cross-examination or otherwise tested for reliability. *Id.* at 136, 88 S.Ct. at 1628.

Had Morrow not testified at Mooneyham's trial, Mooneyham's *Bruton* argument might have merit. But Mooneyham's Sixth Amendment right was exercised during his cross-examination of Morrow. The cross-examination of Morrow disables Mooneyham's claim of constitutional deprivation based on *Bruton*. *See Nelson v. O'Neil*, 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971); *Cruz v. New York*, 481 U.S. 186, 190, 107 S.Ct. 1714, 1717–18, 95 L.Ed.2d 162 (1987); *United States v. Gomez–Lemos*, 939 F.2d 326, 332 (6th Cir.1991).

## II

■ Mooneyham and Morrow contend that their trial was irreparably tainted by judicial bias. The offending judicial statements came at the close of the government's case, as the court was responding to a defense motion for acquittal. The jury was not present.

The first of three statements submitted as evidence of the judge's predisposition against Mooneyham and Morrow came in response to a contention by Mooneyham's attorney that the government failed to provide the necessary proof in support of Count II. The court replied: "Strongest case I could ever think of. I don't know why we're here, but overruled." As Morrow's counsel attempted to speak, the court continued: "Talk about having his hand in the cookie jar when they don't want you to steal cookies."

Finally, the court, after learning that Mooneyham and Morrow planned to take the stand, remarked that the defendants had a duty not to waiver from the truth. Noting that perjury would lead to increased punishment, the court added that "if they come in and tell the truth, as they've got right to do [sic], they've nothing to fear. Absent that, they're, more time is in jeopardy on their lives [sic], if they are, in fact, found guilty. So anyway, with that in mind, bring the jury back, and bring them around."

Neither Mooneyham nor Morrow explains how these statements reflect bias. Each is content simply to conclude that bias is "clear" or "obvious." We disagree, and regard the evidence as falling well short of demonstrating judicial bias.

■ A judge must exhibit "impartiality in demeanor as well as in actions." *United States v. Frazier*, 584 F.2d 790, 794 (6th Cir.1978). Much of the concern about an otherwise inappropriate judicial act or remark is neutralized by the absence of the jury. The threat of prejudice is greatest when a judge overpowers a jury, *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979), or when she unduly interferes with counsel's conduct of the case. *United States v. Slone*, 833 F.2d 595, 598 (6th Cir.1987). Mooneyham and Morrow must overcome a high hurdle here, since the jury was not present when the court uttered the allegedly prejudicial phrases and no undue interference occurred.

Fed.R.Crim.P. 29(a) provides that the court shall order the entry of judgment of acquittal "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction." When Mooneyham moved for a judgment of acquittal at the close of the prosecution's case, the court was obligated to weigh the sufficiency of the evidence. The first two offending statements made by the court are judicial comments in response to the court's duty under Rule 29(a). A trial judge "may analyze the evidence, comment upon it, and express his [or her] views with regard to the trial testimony of the witnesses." *United States v. Seago*, 930 F.2d 482, 492 (6th Cir.1991) (quoting *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933), *overruled on other grounds, Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 77, 84 S.Ct. 1594, 1608, 12 L.Ed.2d 678 (1964)). Under the circumstances, the court's assessment of the evidence harbored no bias against Mooneyham or Morrow.

The court's remark concerning the defendants' duty to tell the truth is not only free of bias, but is consistent with the law.

### III

Mooneyham challenges the adequacy of the jury instruction on the firearm offense. Section 924(c)(1) provides:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.

18 U.S.C. § 924(c)(1).

■ Mooneyham argues that the court failed to fully inform the jury of the necessity to find beyond a reasonable doubt that the gun was carried "in relation to" the commission of a drug offense. A section 924(c) conviction requires the government to prove that the firearm had some relation to or connection with the underlying offense. *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987). Mooneyham states this requirement can only be satisfied by an instruction that does more than reiterate the statutory words "in relation to." Further, Mooneyham claims he was not carrying a firearm "in relation to" a drug trafficking crime, but rather to protect himself from snakes at the marijuana patch.

■ Since no objection was made to the jury instruction, we review for plain error. *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). We are mindful that "the plain error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* at 15, 105 S.Ct. at 1046 (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); *see also United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir.), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986) (in the absence of a contemporaneous objection an improper jury instruction will rarely justify reversal of a criminal conviction).

■ The court instructed the jury on the section 924(c) offense as follows:

> Finally, you must consider Count III of the indictment which charges on or about July 31st, 1988, in Cocke County, within the Eastern District of Tennessee, the defendant, George Mooneyham, aided and abetted by the defendant, Timothy Wayne Morrow, did knowingly and intentionally use and carry a firearm; that is, a .22 caliber revolver during and in relation to a drug trafficking offense. This charge is a violation of a federal law found in Title 18, United States Code, 924(c)(1) and (2), which makes it illegal to use or carry a firearm in relation to any drug trafficking crime.... In order for the Government to carry its burden of proof that Defendant Mooneyham is guilty of the crime charged in Count III, the Government must prove, beyond a reasonable doubt[:] ... First, George Mooneyham unlawfully manufactured marijuana plants as charged in Count I

of the indictment, or conspired to manufacture marijuana, as charged in Count II of the indictment; and secondly, that the Defendant Mooneyham knowingly and willfully carried a firearm during and in relation to this offense.

A substantially similar section 924(c) instruction was upheld by the Seventh Circuit in *United States v. Malin*, 908 F.2d 163 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). In response to Malin's argument that the trial court erred by not explaining the phrase "in relation to," the court noted that "[t]he phrase *in relation to* speaks for itself; any further explanation is superfluous. The district court therefore did not err in failing to give an explanatory instruction, especially since Malin did not request one." *Id.* at 168. It is difficult to improve on this analysis. *Accord United States v. Michaels*, 911 F.2d 131 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991); *United States v. Henning*, 906 F.2d 1392 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991); *United States v. Ramos*, 861 F.2d 228 (9th Cir.1988).

Mooneyham submits *United States v. Brockington*, 849 F.2d 872 (4th Cir.1988) to persuade us of the need for judicial edification of the phrase "in relation to." *Brockington* merely held that a trial court is permitted to give an explanation of the statutory terms if the court desires. We think *Malin* adequately sums up the holding in *Brockington:*

> We have no quarrel with the *Brockington* decision. The issue in *Brockington*, however, was not whether a district court *must* give an explanatory instruction, but rather whether a district court *may* give one. Although, like the court in *Brockington*, we find no error in giving an explanatory instruction, we find it unnecessary.

*Malin*, 908 F.2d at 168.

Jurors were instructed to find Mooneyham guilty of the firearm charge if they believed that he carried the gun "during and in relation to" a drug trafficking offense. Sufficient evidence was presented to support such a finding and the instruction accurately stated the law. The phrase "in relation to" is neither uncommon nor ambiguous; its content is not so arcane as to require exhaustive judicial exposition. The jury instruction therefore contains no error—plain or otherwise—to warrant reversal.

## IV

When Morrow took the stand the government attempted to impeach his credibility by introducing evidence of two prior convictions, one for armed robbery and another for counterfeiting. Morrow contends the court committed reversible error by admitting this evidence in violation of Fed. R.Evid. 609, which provides:

> **(a) General Rule.** For the purpose of attacking the credibility of a witness,
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Morrow first argues that armed robbery is beyond the scope of Rule 609(a)(2) and therefore this conviction was inadmissible. Further, the court's failure to place on the record its balancing of the probative value and prejudicial effect of the prior convictions is described as a breach of Rule 609. Lastly, Morrow contends that because the counterfeiting conviction was prosecuted under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5024 (*Repealed*, Pub.L. 98–473, Title II, § 218(a)(8), Oct. 12, 1984, 98 Stat. 2027), it is inadmissible for impeachment purposes. Fed.R.Evid. 609(d). Morrow misunderstands the requirements of Rule 609.

Rule 609(a)(1) gives broad discretion to the trial court, and its exercise ought not be disturbed absent proof of abuse of discretion. *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.), *cert. denied*, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977). Rule 609(a)(2), by contrast, clearly limits the discretion of the court by mandating the admission of crimes involving dishonesty or false statements. We review decisions under Rule 609(a)(2) for plain error. *McHenry v. Chadwick*, 896 F.2d 184, 189 (6th Cir.1990).

■ Morrow's claim regarding his counterfeiting conviction is unpersuasive. First, although the conviction was prosecuted under the Federal Youth Corrections Act, Morrow was not in fact a juvenile at the time of the conviction. Morrow was born on August 30, 1963, arrested for possessing counterfeit on May 22, 1982, and convicted on August 13, 1982. As a nineteen year-old at the time of his arrest and conviction, Morrow was a legal adult beyond the protection of Rule 609(d).

■ The only question concerning Morrow's counterfeiting conviction is whether counterfeiting is a crime involving "dishonesty or false statements" under Rule 609(a)(2). The term "counterfeit" implies a sham or bogus act. To use counterfeit money is of necessity to trade on the inauthenticity and misrepresentative character of such currency. Counterfeit cash is a pretender to the real thing, and dishonesty is a core ingredient in the offense of counterfeiting. *See United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir.), *cert. denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985) (holding that counterfeiting is a crime of dishonesty and false statement under Rule 609(a)(2)). Morrow's attempt to evade this fact is unavailing.

The armed robbery conviction was properly admitted under Rule 609(a)(1). Here Morrow submits that the court's failure to record publicly its balancing analysis is reversible error.

We have previously held that [u]nder Rule 609(a), the District Judge need not specifically find on the record, as defendant argues, that the probative value of the convictions outweighs their prejudicial effect when the government uses them to attack the defendant's credibility on cross-examination. The rule requiring a special finding of probative value does not apply to recent convictions under 609(a), although it does apply to old convictions under 609(b).

*United States v. Thompson*, 612 F.2d 233, 234 (6th Cir.1979).

During the trial, the court conferred with all parties in a bench conference and then expressly limited the cross-examination to eliciting whether or not Morrow admitted the convictions. The court repeatedly told the prosecution that it could probe no deeper into Morrow's prior convictions. Such caution by the court reflects a concern for the potentially prejudicial effect of this evidence. It is clear from the record that the court undertook the proper balancing analysis even in the absence of the words "probative" and "prejudicial". The court's refusal to utter the precise phrase demanded by Morrow is not an abuse of discretion. *Thompson*, 612 F.2d at 234.

### V

■ Morrow argues that the district court committed reversible error by admitting into evidence fourteen items suggestive of marijuana manufacturing. This physical evidence was seized at the marijuana field and includes mothballs, heavy cord twine, fertilizer, work gloves, plastic bags, and a mattock. Morrow regards this evidence as more prejudicial than probative.

Morrow's failure to object to the admission of this physical evidence confines our review to a search for plain error, Fed. R.Crim.P. 52(b), which this is not. Agents observed Morrow toiling in the marijuana fields. He acknowledged the plan to remove male plants. Under these circumstances, the admission of physical evidence suggesting marijuana manufacturing does not rise even to the level of error, much less "error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assis-

tance in detecting it." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

## VI

The prosecutor's remarks during closing argument are the focus of Morrow's next claim. Morrow considers the government's comments highly prejudicial and an obstruction to a fair trial. Objection is made to the following statements:

> It's against federal law to carry a weapon in the commission of, or to facilitate violation of federal narcotics statute [sic]. And I think you see the reason why. Because it exposes the lives of agents and other people, this is national forest land, you and I, our children have rights to walk on forest land, and that's reason [sic] we have laws we do, to protect citizens, individuals, if they're going to break narcotics laws, but other thing is, they're not going to carry weapons. That's why it's a violation of the law.

Morrow specifically objects to the direct reference to jurors and their children. Since no contemporaneous objection was made, we review this allegation of prosecutorial misconduct for plain error. *Young*, 470 U.S. at 15–16, 105 S.Ct. at 1046.

 Courts are generally reluctant to find reversible error unless the prosecutorial misconduct was egregious, continuous, and uncorrected by judicial intervention. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Bess*, 593 F.2d 749 (6th Cir.1979); *United States v. Morris*, 568 F.2d 396 (5th Cir.1978); *United States v. Splain*, 545 F.2d 1131 (8th Cir.1976); *United States v. Daniel*, 422 F.2d 816 (6th Cir.1970). In *Bess*, for example, we rejected a per se reversible error rule in instances of prosecutorial misbehavior. *Bess*, 593 F.2d at 756. Rather, "the complained-of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." *Id.* at 757.

 The conduct challenged here is an isolated statement referring to the threat posed by the defendants to the jurors and their children. No contemporaneous objection was made. As considered more fully below, the evidence submitted during the trial was more than sufficient for the jury to convict. The jury received proper instructions from the trial judge. Under *Bess*, the prosecutor's ill-chosen words did not violate Morrow's right to a fair trial.

## VII

 We turn next to Morrow's claim of ineffective assistance of counsel. Morrow offers four examples of his attorney's inadequacy. Collectively, Morrow asserts these examples demonstrate a deprivation of his Sixth Amendment right to counsel.

Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must first prove that his counsel's performance fell short of the norms of the legal profession. He must then show a reasonable probability "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. So the threshold issue is not whether Morrow's attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory.

Morrow complains of his attorney's failure to (1) object to or move to exclude certain evidence, (2) subpoena medical testimony purportedly showing that Morrow was physically unable to perform the acts he was accused of, (3) impeach certain government witnesses, and (4) file a motion for a new trial or acquittal pursuant to Fed. R.Crim.P. 33.

The record shows that Morrow's attorney engaged in active pretrial and motion practice and was diligent during the trial. Morrow's discontent is focused mostly on tactical decisions regarding whether to object or which witnesses to call. We are

mindful of our obligation to examine counsel's performance with deference:

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)); *see Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir.1984).

In the face of substantial evidence supporting Morrow's conviction, his claim that but for counsel's ineffective representation the outcome of the proceedings would have been different is hollow. Morrow's legal assistance was at least adequate. He is not entitled to the most canny lawyer available, only an adequate one. *Flippins v. United States,* 808 F.2d 16, 19 (6th Cir.), *cert. denied,* 481 U.S. 1056, 107 S.Ct. 2197, 95 L.Ed.2d 852 (1987). Having received constitutionally effective counsel, Morrow's Sixth Amendment argument must fail.

### VIII

Morrow contends that the evidence was insufficient to support his three-count conviction. Mooneyham pleads insufficient evidence as to the firearm conviction. Our review of the sufficiency of the evidence is quite limited. We view the evidence in the light most favorable to the government and will affirm the jury's verdict unless no rational trier of fact could have found, beyond a reasonable doubt, that Morrow and Mooneyham committed the offenses charged. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989).

■ Mooneyham's argument is easily disposed of. Mooneyham moved for a judgment of acquittal upon completion of the government's case but failed to renew this motion at the close of all the evidence. Absent a manifest miscarriage of justice, Mooneyham's failure to renew his motion is a waiver of the right to challenge the sufficiency of the evidence on appeal. *United States v. Faymore,* 736 F.2d 328, 334 (6th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984); *United States v. Van Dyke,* 605 F.2d 220, 225 (6th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). Finding no miscarriage of justice, Mooneyham's claim is barred.

Morrow argues that the evidence adduced at trial was insufficient to show that he (1) aided and abetted Mooneyham in the unlawful manufacture of marijuana (Count I), (2) conspired with Mooneyham to manufacture pot (Count II), and (3) aided and abetted Mooneyham's carrying of a firearm during and in relation to a drug crime (Count III).

■ It was established at trial that Morrow and Mooneyham, wearing ski masks to cover their faces, traveled to a marijuana field and began removing male marijuana plants. Morrow admitted on cross-examination that he intended to aid Mooneyham in the collection of male plants. On the basis of this evidence alone a rational trier of fact might well conclude that Morrow was guilty on Counts I and II.

■ Morrow's conviction for aiding and abetting on the section 924(c) offense presents a more difficult question. Judge Learned Hand aptly characterized aiding and abetting as one's desire to "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938). Judge Hand's conception of aiding and abetting has been adopted by the Supreme Court. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *see also United States v. Knox,* 839 F.2d 285, 294 (6th Cir.1988), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989); *United States v. Bradley,* 421 F.2d 924, 927 (6th Cir.1970).

The jury found that Mooneyham carried the gun "during and in relation to" a drug

trafficking offense, and this finding is supported by sufficient evidence. Mooneyham testified that the gun's purpose was to protect him from snakes. Whether the protection sought was from snakes or other persons, a jury could easily infer that he carried the firearm in order to in some way facilitate the crime. *See United States v. Acosta–Cazares,* 878 F.2d 945, 951–52 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989); *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988) (a gun is used within the meaning of section 924(c) if, although not brandished or discharged, it nonetheless is an integral part of the criminal undertaking and its availability increases the likelihood that the criminal undertaking will succeed); *see also United States v. Henry,* 878 F.2d 937, 944 (6th Cir.1989). We agree with the Ninth Circuit's description of the necessary relationship between the firearm and the predicate offense:

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute (citations omitted).

*Stewart,* 779 F.2d at 540. Under *Stewart,* a rational trier of fact might reasonably conclude that Mooneyham's firearm was a source of emboldenment or protection. *See United States v. Harris,* 959 F.2d 246, 261–62 (D.C.Cir.1992) (per curiam); *United States v. Phelps,* 895 F.2d 1281, 1287–88 (9th Cir.1990) (Kozinski, J., dissenting from denial of rehearing en banc).

That leaves only Morrow's act in furtherance of Mooneyham's 924(c) crime. As noted, under 18 U.S.C. § 2, the government must prove that the defendant both associated and participated in the use of the firearm in connection with the underlying crime. *See Nye & Nissen,* 336 U.S. at 619, 69 S.Ct. at 770; *United States v. Hughes,* 891 F.2d 597, 599 (6th Cir.1989). *See also,*

*United States v. Powell,* 929 F.2d 724, 728 (D.C.Cir.1991) (holding that for § 924(c) liability the accomplice must have known to a practical certainty that the principal would be carrying a gun). Morrow argues that he cannot be convicted of aiding and abetting since he did not know Mooneyham possessed a firearm. Notwithstanding the assertion, there is ample evidence from which a jury could reasonably conclude that Morrow knew his co-conspirator Mooneyham carried a firearm and that carrying the firearm facilitated a drug offense. On the morning in question, the defendants changed in each other's presence from street clothes to their camouflage outfits. Mooneyham strapped on a holster and revolver. Further, forest rangers surveilling the scene testified that from a distance of 25 feet they observed a visible holstered revolver strapped to Mooneyham's waist. Thus, a jury could reasonably conclude that Morrow knew Mooneyham was carrying a firearm.

Concededly, mere presence and knowledge of the offense would not be sufficient to convict Morrow on this basis. *See United States v. Winston,* 687 F.2d 832, 835 (6th Cir.1982). However, Morrow also testified that he wore the ski mask for his own protection from drug dealers, poachers, or the owners of the marijuana. Defendant's act of wearing a ski mask to protect himself, when combined with the certainty that Morrow must have observed the weapon, leads to a reasonable inference that he likewise intended that the weapon be used for protection, not from snakes, but from other individuals who might interfere with the trafficking venture. Morrow was as much a potential beneficiary of the firearm being present as was Mooneyham. The firearm was facilitating Morrow's drug trafficking efforts just as it was for Mooneyham. Thus, the evidence established both aspects of an aiding and abetting offense. For these reasons then the jury's verdict as to Morrow's conviction for aiding and abetting Mooneyham's section 924(c) offense must stand.

## IX

▮ Lastly, Morrow claims that his sentence was improperly enhanced. Morrow

was charged with and convicted of manufacturing one hundred or more marijuana plants. Yet he was sentenced on the basis of possessing 883 marijuana plants, the number of plants recovered from the marijuana field. Morrow argues that a sentence based on the larger of two quantities is improper when the indictment specified the lesser amount.

The commentary to the sentencing guidelines states that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct)." United States Sentencing Guidelines, § 2D1.1, comment. (n. 12). This court has often upheld sentences predicated on quantities exceeding the amount listed in an indictment where the larger quantity was part of the criminal activity or transaction. *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989) ("Under the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total amount in order to determine the base level."); *see also United States v. Gonzales,* 929 F.2d 213 (6th Cir.1991); *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989); *United States v. Smith,* 887 F.2d 104 (6th Cir.1989). Our cases are on all fours with other circuits regarding the propriety of applying the quantity of drugs in a defendant's relevant conduct rather than a lesser amount identified in the indictment. *See, e.g., United States v. Lawrence,* 915 F.2d 402 (8th Cir. 1990); *United States v. Rutter,* 897 F.2d 1558 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Alston,* 895 F.2d 1362 (11th Cir. 1990); *United States v. White,* 888 F.2d 490 (7th Cir.1989); *United States v. Williams,* 880 F.2d 804 (4th Cir.1989); *United States v. Taplette,* 872 F.2d 101 (5th Cir.), *cert. denied,* 493 U.S. 841, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. Guerrero,* 863 F.2d 245 (2d Cir. 1988).

In response, Morrow directs us to a single pre-guidelines case, *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984). *Alvarez* held invalid an enhanced sentence where quantity was a critical element of the offense and the indictment failed to allege a specific amount. *Id.* at 468. Unlike the sentencing decision reviewed in *Alvarez,* the federal guidelines now govern all sentencing judgments in federal court. As noted above, the enhancement received by Morrow was explicitly provided for by the guidelines.

Furthermore, the indictment charging Morrow did in fact allege a specific amount, to wit: one hundred or more marijuana plants. The 883 plants on which Morrow's sentence was based is therefore consistent with the quantity expressly charged in the indictment. Morrow's argument to the contrary fails.

### X

Morrow and Mooneyham were partners in a criminal undertaking that involved conspiracy, unlawful manufacturing of marijuana, and a gun. Each bears criminal responsibility for all aspects of their joint venture. The judgment of the district court is affirmed.

BOYCE F. MARTIN, JR., Circuit Judge, with whom MERRITT, Chief Judge, and KEITH, NATHANIEL R. JONES, and BOGGS, Circuit Judges concur, concurring in part and dissenting in part.

I must dissent from the majority opinion in this case insofar as it affirms the conviction of Timothy Wayne Morrow for aiding and abetting George Mooneyham in the carrying of a firearm during and in relation to a drug trafficking offense. The prosecution failed to prove the essential elements of the crime of aiding and abetting the carrying of a firearm and thus failed to prove a violation of 18 U.S.C. § 924(c)(1).

In order to be convicted for aiding and abetting another to commit a crime, "it is necessary that [the] defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States,* 336 U.S. 613, 619,

69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938)). Thus, there is a three-step process for proving aiding and abetting: (1) the defendant must be associated with the criminal venture, (2) the defendant must have participated in the criminal venture, and (3) the defendant must have shared in the intent of the principal actor to perpetrate the criminal venture. *United States v. Medina*, 887 F.2d 528, 532 (5th Cir.1989). *See also United States v. Pope*, 739 F.2d 289, 291 (7th Cir.1984); *United States v. Thomas*, 676 F.2d 531, 535 (11th Cir.1982).

In the original indictment, Morrow was charged with three distinct crimes: manufacturing marijuana, conspiring to manufacture marijuana, and aiding and abetting George Mooneyham in the carrying of a firearm during and in relation to a drug trafficking offense. In support of Morrow's aiding and abetting conviction, the majority has relied upon *United States v. Acosta–Cazares*, 878 F.2d 945 (6th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989), and *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987), for the proposition that a conviction under section 924(c) is proper if the presence of a weapon empowers a co-defendant or helps to insure that a crime will succeed. Apparently, by virtue of *Acosta–Cazares* and *Stewart*, the majority believes that if Mooneyham carries the gun and is more emboldened by its presence, that *feeling* can be legally transferred to Morrow, thus fulfilling the "association" and "participation" requirements of *Nye*. In other words, under the majority's view, if Mooneyham is emboldened by the presence of the gun, then Morrow, by his mere proximity to Mooneyham, has associated with carrying the weapon, and thus, Morrow has *participated* in the carrying of the weapon.

As the majority points out, proof—however dubious—of association and participation is not enough for conviction. *See United States v. Morrow; Mooneyham*, p. 231 (citing *United States v. Winston*, 687 F.2d 832, 835 (6th Cir.1982)). The United States must also prove that Morrow committed an affirmative act in furtherance of Mooneyham's carrying of the gun. According to the majority, Morrow's guilty affirmative act was the donning of a ski mask. In the majority's view, Morrow wore the ski mask because he was afraid of other drug dealers or the owners of an adjoining marijuana patch. Somehow, Morrow's fear, combined with his clothing, apparently demonstrates, for purposes of the aiding-and-abetting statute, Morrow's criminal intent that Mooneyham carry a weapon to facilitate the violation of drug laws. In addition, under the majority's interpretation, Morrow's fear, combined with the wearing of the ski mask, satisfies the requirement of an affirmative act that assisted, aided, or abetted Mooneyham in carrying the weapon. The majority reaches this conclusion by relying on possible inferences that *could* be made by a reasonable jury. The majority states that a reasonable jury could infer from the facts that Morrow knew that Mooneyham was carrying a gun and that because Morrow was wearing a ski mask, he intended that Mooneyham carry a weapon. The majority's inferences, quite simply, are not logical; The majority fails to show with certainty an affirmative act on the part of Morrow. As the Supreme Court stated in *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), we must "determine whether the record evidence could support a finding of guilt beyond a reasonable doubt." The majority's conjectures about possible inferences do not satisfy the certainty required by the *Jackson v. Virginia* standard. This record is devoid of any proof whatsoever of an affirmative act by Morrow in furtherance of Mooneyham's carrying of a weapon.

In reaching its conclusion, the majority twists traditional and well-established jurisprudence. Under the majority's view, the aiding and abetting statute takes on a whole new life. In essence, the majority adopts a version of strict liability for the crime of aiding and abetting. The majority rewrites the law with respect to aiding and abetting by no longer requiring the proof

of (1) an act in furtherance of the criminal venture, and (2) the intent to aid and abet the underlying substantive offense. In a legal sleight-of-hand, the majority expeditiously resolves this case but, in doing so, completely ignores long-established principles underlying the legal standards that define the offense of aiding and abetting a criminal venture.

The facts of this case have little to do with traditional aiding-and-abetting circumstances. Certainly Mooneyham aided and abetted the cultivation of marijuana. Under these facts, a conviction on the conspiracy charge was appropriate. Contrary to the creative efforts of the majority, however, the evidence is insufficient to support Morrow's conviction for aiding and abetting the possession of a firearm in relation to a drug trafficking offense. The majority upholds Morrow's conviction based on little more than Morrow wearing a ski mask. In my opinion, this is legally unsound. Under the majority's rationale, where one defendant is guilty of carrying a firearm during and in relation to a drug trafficking offense, a co-defendant becomes strictly liable under a charge of aiding and abetting the firearm offense. Under the majority scheme, proof of an affirmative act or the defendant's intent to carry out the charged crime is unnecessary and superfluous. The majority's view flies in the face of logic and long-standing criminal jurisprudence.

By enhancing the sentence for the underlying drug conviction with an additional five-year sentence, Congress intends to punish those who use firearms during drug offenses. Mooneyham has been correctly charged and found guilty of such an offense. Morrow, on the other hand, has taken no action nor shown any criminal intent to indicate that he was aiding and abetting Mooneyham *in the carrying of the firearm.*

The majority's opinion has pointed out the inherent weakness in an earlier decision that I wrote for a panel of this court, *United States v. Christian*, 942 F.2d 363 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992). In

*Christian*, I wrote that, under the decision in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a criminal defendant could be convicted for aiding and abetting a co-conspirator in carrying a weapon if it was foreseeable that the co-conspirator might possess a gun. *Christian*, 942 F.2d at 367. Under *Pinkerton*, a defendant may be held criminally liable for acts of his co-conspirator even though the defendant does not participate in the substantive offense or even know of its existence. *Id.* at 647, 66 S.Ct. at 1184. The defendant is liable if he could reasonably foresee that the co-conspirator's criminal acts would occur. *Id.* My opinion in *Christian* notwithstanding, it is far too attenuated to impose constructively the act *and* intent requirements of a charge of aiding and abetting simply through the existence of a co-conspirator's acts. There must be a finding of an act and intent on the part of the secondary actor in order to uphold an aiding and abetting conviction. *United States v. Fischel*, 686 F.2d 1082, 1087 (5th Cir.1982). Because no such finding could be made based on the evidence before the jury, we should reverse Morrow's conviction for aiding and abetting under *Jackson v. Virginia*, 443 U.S. at 318, 99 S.Ct. at 2788.

Regarding the remaining issues on appeal, I join the majority. Morrow and Mooneyham's convictions for unlawfully manufacturing marijuana plants as well as their conspiracy convictions should be affirmed. Additionally, in light of the indictment and the evidence at trial, Mooneyham's sentence was appropriate under the Sentencing Guidelines. The majority is also correct on the issue of the district judge's impartiality. Finally, even though the prosecutor's comments during the closing argument were improper, in this case the statements constitute harmless error.

While this case is a fairly standard criminal prosecution, it has required a prodigious amount of effort and time. The result of this lengthy process, the majority opinion, fails to adequately provide Morrow with a logical reason why his conviction for aiding and abetting Mooneyham's carrying a weapon is being upheld. Needless to say,

the en banc process is a cumbersome one, but this court must reach a conclusion that is fair and supported both by logic and fact. On the issue of Morrow's aiding-and-abetting charge, the majority opinion is unfair, illogical, and not supported by the facts.