57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Darrin A. AUSTIN, Defendant-Appellant.
 No. 94-3361.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges; and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 In an indictment filed November 10, 1993, the appellant was charged with knowingly possessing with intent to distribute crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Prior to trial he filed a motion to suppress physical evidence. The motion was denied except for some evidence of drug records found in a floor safe.
 
 
 2
 A trial by jury ensued which ended in a hung jury on January 13, 1994. A second jury found the appellant guilty as charged on February 11, 1994. He was sentenced to be imprisoned for a term of 264 months. He timely appealed.
 
 
 3
 In his appeal the appellant claims (1) that the district court erred in denying the motion to suppress and (2) that an accumulation of errors at trial was so egregious that he was denied a fair trial.
 
 I.
 
 4
 Members of the FBI bank robbery squad acquired information that a man named Darnell Wiggins may have participated in three armed bank robberies in the Cleveland area. The federal officers learned that there were two outstanding county warrants for Wiggins' arrest and that Wiggins may have been living with his mother at 10735 Gooding Street, Cleveland, Ohio. On September 23, 1993, fourteen officers conducted a raid on the Gooding Street premises for the purpose of arresting Wiggins and, if possible, obtaining evidence concerning the bank robberies.
 
 
 5
 When no one responded to knocking, the door was forced open and officers entered the house. The officers encountered the appellant, Darrin A. Austin, coming down the stairs. The officers concluded that he was the person for whose arrest the warrants had been issued and he was arrested.
 
 
 6
 During an initial sweep of the house, officers observed three handguns in a bedroom.
 
 
 7
 Before leaving the premises, the officers encountered the appellant's stepfather who had not been there when they first arrived. He stated that he was the owner of the home and then provided consent to a search of the house.
 
 
 8
 During this search, bags of suspected crack cocaine were found concealed in the basement rafters. In the appellant's third-floor bedroom the officers seized pieces of crack cocaine, a cutting board and other drug paraphernalia found under his bed. In his bedroom closet they found tubes for cooking crack cocaine.
 
 
 9
 The appellant argues that the evidence uncovered in his bedroom was illegally seized because his stepfather did not have the authority to consent to a search of that room. The appellant styles his living quarters as an apartment as evidenced by the fact that he paid rent for the room, that he had a separate phone and that he paid for the utilities servicing the room. There is also evidence that a door separates the second and third floors.
 
 
 10
 In Illinois v. Rodriguez, 497 U.S. 177, 179 (1990), the United States Supreme Court held that a "warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not." See also United States v. Hall, 979 F.2d 77, 79 (6th Cir.1992), cert. denied, 113 S.Ct. 1357 (1993).
 
 
 11
 Although the stepfather may not have had actual authority over the third-floor bedroom, there is sufficient evidence to support the district court's finding that at the time the search was conducted the police officers reasonably believed that the stepfather possessed such authority.
 
 
 12
 First, the third floor area had no special locks or separate outside entrance. Although there was a door separating the floors, the door was neither closed nor locked. Second, there were no separate kitchen facilities that would have indicated a separate living arrangement. Finally, there was a storage area on that level which held clothes and little girls' toys indicating that all occupants of the house had access to all floors of the dwelling.
 
 
 13
 We find no error in the district court's decision on the motion to suppress.
 
 II.
 A. The Appellant's Claim
 
 14
 Repeatedly, on the direct examination of officers who had participated in the raid, it was disclosed that the legal justification for the raid was to arrest a man named Darnell Wiggins on two county arrest warrants; one for an unrelated drug trafficking charge and one for carrying a concealed weapon.
 
 
 15
 On repeated occasions government witnesses testified that Austin was a suspect in more than one bank robbery, and that members of the FBI bank robbery squad were participating in the arrest in anticipation of obtaining evidence concerning bank robberies.
 
 
 16
 The government introduced evidence that officers learned during the raid that Darrin Austin used the name Darnell Wiggins as an alias, and that Austin was arrested pursuant to the arrest warrants in Wiggins' name.
 
 
 17
 Information was developed that the officers conducting the raid included fourteen federal, county and local police officers and was made up of not only the normal contingent of a fugitive task force, but also included three or four members of the FBI bank robbery squad.
 
 
 18
 After several witnesses had given testimony, without objection by defense counsel, to the existence of the arrest warrants and to the fact that the appellant was a bank robbery suspect, the judge, sua sponte, gave the jury the following precautionary instruction:
 
 
 19
 Let me interrupt and say to the jury there's been a lot of discussion about outstanding warrants, about the bank robbery squad. This defendant is on trial for one offense and one offense only, and this is possession of cocaine with intent to distribute.
 
 
 20
 That's the offense before you, nothing else. And so all this talk about outstanding warrants should go in one ear and come out the other. It does not relate to this case. It's not relevant. It doesn't pertain. All it does is explain why the agents were present and when they were. It's of no other value to you. Proceed please.
 
 
 21
 Although three handguns were found on the premises in which Austin was arrested, a weapon called a Tech Nine was not found on the premises. Prior to developing any connection between Austin and a Tech Nine, one government witness was asked by the government to describe a Tech Nine. The witness responded as follows:
 
 
 22
 It's a nine millimeter machine pistol. It could look like a Uzi submachine gun. It's a small compact weapon capable of firing an enormous amount of rounds in a short period of time. It can be converted easily from a semi-automatic to a fully automatic weapon.
 
 
 23
 Later in the trial the government asked an FBI agent if, during an interview of Austin, he had asked Austin about any weapons he might own. The witness testified that Austin said that he once had a Tech Nine but had sold it.
 
 
 24
 Although there was no objection to this line of questioning the court intervened and said, in effect, that the discussion about the Tech Nine was absolutely irrelevant to this case and that, as he had already explained, the one charge in this case was the charge in the indictment.
 
 
 25
 Notwithstanding the court's ruling that evidence concerning the Tech Nine was irrelevant, the government, in final argument, argued that guns like the Tech Nine are a common part of the drug business.
 
 
 26
 On appeal the appellant argues that evidence concerning his possible involvement in another drug transaction, in carrying a concealed weapon and in bank robberies was inadmissible by operation of Rule 404(b), Federal Rules of Evidence, which restricts the admissibility of evidence of other crimes. He also argues that to the extent that some of it may have been relevant to some issue, its probative value was substantially outweighed by the danger of unfair prejudice and it should have been excluded pursuant to Rule 403 of the Federal Rules of Evidence.
 
 
 27
 Recognizing that defense counsel raised no objection to the admission of any of this evidence, on appeal appellant asserts that the cumulative effect of the evidence concerning other criminal activity and the Tech Nine was so fundamentally unfair as to violate the appellant's right to due process of law notwithstanding the judge's sua sponte cautionary instructions.
 
 B. The Government's Response
 
 28
 The government argues that the evidence complained about was relevant, but even if there was error it was not plain error because (1) the judge gave curative instructions, (2) the defendant's failure to object was strategic and (3) in any event the error did not affect the outcome of the trial.
 
 
 29
 The government argues that evidence concerning the arrest warrants was relevant to explain the purpose of the raid. Likewise, the government argues that evidence concerning the bank robbery investigation was necessary to justify the presence of members of the bank robbery squad and to explain the purpose of the search after the appellant was arrested. The government does not even attempt to justify admission of evidence that the appellant once owned a Tech Nine machine pistol nor for the use of this evidence in final argument.
 
 
 30
 Running through defense counsel's opening statements and final arguments in each trial was the theme that the government used the arrest warrants and fabricated drug distribution charges against the appellant for the purpose of inducing him to cooperate with it in connection with its bank robbery investigation. The defense even used a defense witness, the appellant's grandmother, to show that the purpose of breaking into the home was to obtain bank robbery evidence.
 
 
 31
 During the trial government witnesses testified that the appellant admitted the drugs found in the house were his and that he was in the business of selling drugs.
 
 
 32
 C. Application of the Plain Error Doctrine to the Facts of this Case
 
 
 33
 Because counsel did not make timely objections, we review for "[p]lain errors or defects affecting substantial rights...." Fed.R.Crim.P. 52(b); United States v. Morrow, 977 F.2d 222, 226 (6th Cir.1992), cert. denied, 113 S.Ct. 2969 (1993).
 
 
 34
 The plain error doctrine involves the following analyses:
 
 
 35
 First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then ... decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.
 
 
 36
 United States v. Nelson, 27 F.3d 199, 202 (6th Cir.1994), citing United States v. Thomas, 11 F.3d 620 (6th Cir.1993), cert. denied, 114 S.Ct. 1570 and 1571 (1994).
 
 
 37
 The government overplayed its hand and by doing so placed the prosecution at unnecessary risk. However, taking into consideration (1) defense counsel's decision, for strategic reasons, not to have the court impose some reasonable limitations upon the government's use of prejudicial evidence, (2) the precautionary instructions and (3) the substantial evidence of the appellant's guilt, we are of the opinion that such error as did occur was not plain error.
 
 Conclusion
 
 38
 The conviction is affirmed.
 
 
 
 *
 Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation