61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Respondent-Appellee,
v.
Lucien JACKSON, Petitioner-Appellant.
 No. 94-1580.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1995.
 
 Before: JONES and SILER, Circuit Judges; WISEMAN, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant, Lucien Jackson, appeals the district court's denial of his petition to vacate sentence, 28 U.S.C. Sec. 2255, which was based on his claim of ineffective assistance of trial counsel. For reasons stated herein, we affirm.
 
 I.
 
 2
 On August 30, 1990, Detroit Police Department narcotics officers, accompanied by a Bureau of Alcohol, Tobacco and Firearms ("BATF") special agent, with search warrants, went to houses at 19179 and 19189 Lindsay Street. As they approached, they observed Jackson and another man, his co-defendant at trial, in the driveway between the two houses. As the officers emerged from the police-marked van, Sergeant Lee observed Jackson reach into his pocket, remove a small plastic bag, and throw it to the ground. Lee ordered Jackson to the ground and retrieved the bag, which contained seven rocks of cocaine base, or "crack" cocaine. Lee then arrested Jackson and advised him of his constitutional rights.
 
 
 3
 The officers searched both houses. They found two weapons in a bedroom closet at 19179 Lindsay: a 12-gauge Mossberg shotgun and a sawed-off Winchester shotgun. Although Jackson, when arrested, admitted to Sergeant Lee that he resided at 19179 Lindsay with Ms. LaShan Henry and their children, he argued at trial that he did not reside at 19179 Lindsay, but lived with his brother Theron on Michigan Avenue at the time of his arrest.
 
 
 4
 Incident to the search, Ms. Henry admitted, both orally and in writing, that the two shotguns belonged to Jackson, that he resided with her at 19179 Lindsay five or six nights per week, and that she was scared of him because he had threatened her a number of times. At trial, however, Ms. Henry contradicted those statements, claiming that she had only made those statements because she was afraid of the officers. She also claimed, at trial, that Jackson stayed at 19179 Lindsay only two or three nights a week, and that she had purchased the Mossberg shotgun for the protection of her home and family. She stated that the sawed-off shotgun had been brought into her home on previous occasions by her sister's boyfriend, Steve, but that she had not known it was in the closet on the day of Jackson's arrest.
 
 
 5
 Jackson later admitted to officers that he lived at 19179 Lindsay and that the two shotguns were his. He reviewed, then signed, the "Detroit Police Department Interrogation Record" which admitted his ownership of the weapons. At trial, however, Jackson denied making the statements recorded in the interrogation record and claimed that he was forced to sign a document that he never saw.
 
 
 6
 Jackson was indicted on three charges. Count one charged him and his co-defendant with aiding and abetting the possession with intent to distribute cocaine base within 1000 feet of a school in violation of 21 U.S.C. Secs. 841(a)(1) and 845(a), and 18 U.S.C. Sec. 2. Count two charged Jackson with being a felon in possession of a firearm (the 12-gauge Mossberg shotgun) in violation of 19 U.S.C. Sec. 922(g)(1), and count three charged him with possession of an unregistered firearm (the sawed-off Winchester shotgun) in violation of 26 U.S.C. Sec. 5861(d).
 
 
 7
 Jackson disputed the government's position that he possessed the two guns. The prosecution presented numerous witnesses to prove his possession of the firearms. The officer who interviewed Jackson presented the written admissions Jackson made. Another officer testified that Ms. Henry had admitted that the shotguns found at 19179 Lindsay were Jackson's firearms.
 
 
 8
 The defense called numerous witnesses to the stand. Jackson's brother testified that Jackson lived with him, not with Ms. Henry. Larry Taylor, a close friend of Jackson and Ms. Henry, testified that Jackson did not live with Ms. Henry at 19179 Lindsay, and that the sawed-off Winchester shotgun was, in fact, owned by "Steve," Ms. Henry's sister's boyfriend. Ms. Winston, a neighbor, testified that Jackson did not reside with Ms. Henry and that he did not possess any cocaine when the law enforcement officers arrested him.
 
 
 9
 The jury acquitted Jackson and his co-defendant on the drug charge, but Jackson was convicted of the firearms charges. Jackson, alleging that his trial counsel had failed to prepare properly for trial, requested that his trial counsel be replaced prior to sentencing. The district court complied with his request. Appointed counsel filed a motion for a new trial, arguing that Jackson had been denied the effective assistance of counsel at his trial. Jackson claimed that his trial counsel failed to call as a witness Deundra Shelton who would have testified as follows:
 
 
 10
 1. I used to live next door to LaShan Henry on Lindsay Street, where the officers seized the sawed-off shotgun from. 2. Steve Gilbert and Ralph Thornhill had been driving around with the sawed-off shotgun in their car. Someone told them that they shouldn't drive around with a gun like that in their car. 3. Steve Gilbert, who was LaShan's sister [sic] boyfriend, brought the gun to LaShan's house. I personally saw them take the gun into the house on Lindsay Street. 4. Later, when Lucien Jackson found out that the gun had been put in the house, he told LaShan Henry to have Steve take his gun and get it out of the house. 5. I never saw Lucien Jackson with the sawed-off shotgun in his possession.
 
 
 11
 The district court denied Jackson's motion for new trial, holding that he failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. The court specifically found that Shelton's proffered testimony, to the limited extent that it would have been admissible, was cumulative of the testimony offered by Ms. Henry and Larry Taylor. The district court sentenced Jackson to thirty months of incarceration on each count, to run concurrently, followed by two years of supervised release. Jackson appealed the denial of his motion for a new trial to this court. We vacated the district court's order, holding that, because the motion was untimely, the district court lacked jurisdiction to rule on the motion.
 
 
 12
 More than one year after this court's decision, Jackson filed a petition to vacate his sentence under 28 U.S.C. Sec. 2255. Jackson argued that his counsel "failed to meet with him enough to prepare sufficiently for trial" and that "trial counsel's personal circumstances were in such disarray that he could not perform adequately in his representation of Defendant." Additionally, Jackson alleged that trial counsel failed to subpoena not only Deundra Shelton, but also another witness purportedly proffered by trial counsel in the opening statement.
 
 
 13
 The district court denied the petition, noting that Shelton's testimony was largely hearsay, and that, to the extent it would have been admissible, it would have been contradictory of trial testimony regarding Jackson's knowledge of the sawed-off shotgun's presence in the house. The court also noted that the promised but unproduced witness referred to in opening statement was relevant to the drug charge only, and, as Jackson was acquitted of that charge, the failure to produce that witness had not prejudiced him.
 
 II.
 
 14
 In order to establish ineffective assistance of counsel, Jackson must show that counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). He must do more than point to decisions of counsel with which he disagrees in hindsight and must overcome the strong presumption that the challenged decisions, at the time they were made, might have been considered sound trial strategy. Id. at 689. Even if he can establish that his trial counsel's performance was inadequate, Jackson must also establish a "reasonable probability 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " United States v. Morrow, 977 F.2d 222, 229 (6th Cir.1992) (en banc ), cert. denied, 113 S.Ct. 2969 (1993) (quoting Strickland, 466 U.S. at 694).
 
 
 15
 The specific actions of counsel on which Jackson bases his claim of ineffective assistance are that: 1) he failed to meet with him enough to prepare properly for trial; 2) his personal problems prevented him from performing adequately; and 3) he failed to "interview and subpoena a key witness [Deundra Shelton] to testify at trial."
 
 
 16
 As for trial counsel's personal problems and failure to meet with Jackson, Jackson has presented no evidence, but only allegations to that effect. Jackson contends that trial counsel's subsequent disbarment for similar conduct is evidence of his inadequate performance. Evidence of subsequent conduct, however, without more, is not relevant to trial counsel's conduct in representing Jackson at the time of trial. In any event, Jackson failed to establish that trial counsel's alleged failure to meet with him prejudiced the outcome of the trial.
 
 
 17
 Jackson also challenges defense counsel's promise, during opening statement, to produce Deundra Shelton as a witness and subsequent failure to produce this witness. To the extent that the proffered testimony would have been admissible, however, it was duplicative of trial testimony relative to the source of the weapons and contradictory to trial testimony regarding Jackson's awareness of the presence of the guns in the house.
 
 
 18
 Jackson also has failed to establish a reasonable probability that, had Shelton been called, his testimony would have affected the outcome of the trial. Jackson argues that, because trial counsel had promised the testimony of Shelton, failure to call him as a witness left the jury to speculate that his testimony would have been incriminating, or that trial counsel simply had lied. Jackson also contends that the prejudicial effect of failing to call Shelton was heightened by the prosecution's closing argument, which reminded the jury of the unproduced witness. However, the "missing witness" referred to in the prosecution's closing argument was Ms. Henry's sister, not Deundra Shelton. Moreover, the jury, upon objection by defense counsel, was instructed that "the failure to produce any witness cannot really [sic] held against a defendant," because a defendant has no burden to produce evidence.
 
 
 19
 Even if, as Jackson contends, "it is impossible to say that the Defendant's failure to produce [Shelton] ... did not affect the jury's assessment as to credibility," he has fallen short of establishing a reasonable probability that Shelton's testimony would have affected the outcome of the trial. This case is far different from Clark v. Redman, 865 F.2d 257, 1988 WL 138971 (6th Cir.1988) (per curiam), in which this court held that trial counsel's complete failure to investigate any of the defendant's alibi witnesses had undermined confidence in the outcome. The Redman case was "clearly not a case in which there is overwhelming support for the verdict." Id. at *As pointed out in Strickland, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland v. Washington, 466 U.S. at 696.
 
 
 20
 In contrast to the verdict in Redman, the verdict in this case is amply supported by the record. Defense counsel called five witnesses, and successfully argued for Jackson's acquittal on the drug charge. As for the weapons charge, defense counsel had to deal with admissions of Jackson's guilt in two separate written, signed statements by both him and his girlfriend. Moreover, the evidence by Shelton concerned only one of the weapons. Finally, in light of the jury instruction given by the trial judge regarding the failure to call any witness, and the duplicative nature of Shelton's proposed testimony, the outcome was not likely to have been affected by the failure to call Shelton as a witness.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation