DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Keenya Curry pled guilty to, and was convicted of, five counts of endangering children, in violation of R.C. 2919.22(A). She was later sentenced to five years for each count, to be served consecutively. She has appealed from her conviction and sentence.
Curry has assigned as error that (1) her counsel was ineffective; (2) her guilty plea was involuntary because it was based on misleading information from her attorney; and (3) it was an abuse of discretion to require that her sentences be served consecutively.
 I
In December 1997 Curry was indicted on two counts of kidnapping, in violation of R.C. 2905.01(A)(2), two counts of endangering children, in violation of R.C. 2919.22(B)(2), and two counts of endangering children, in violation of R.C. 2919.22(A). A supplemental indictment was filed in June 1998, charging her with ten additional counts of kidnapping, in violation of R.C.2905.01(B), ten additional counts of endangering children, in violation of R.C. 2919.22(B)(2), and ten additional counts of endangering children in violation of R.C. 2919.22(A).
On July 7, 1998, Curry pled guilty to five counts of endangering children, in violation of R.C. 2919.22(A), felonies of the third degree. The court dismissed the remaining charges against Curry, which included twelve first degree felonies, twelve second degree felonies, and seven third degree felonies.
At the plea hearing, the court inquired about Curry's education and current use of chemicals that might impair her ability to understand the nature of the proceedings. It informed Curry that it was "not making any promises or commitments with regard to sentencing[,]" which Curry indicated that she understood. Curry was specifically told that the recommendation was only "that the balance of the counts of the indictment be dismissed." Curry agreed with the statement by the court that no one had "promised [her] anything or forced [her] in any way to plead guilty to these charges." The court inquired as to Curry's understanding of the penalty for a third degree felony. It explained that if Curry were to plead guilty to five counts and the "maximum prison sentence was imposed consecutively, that would be a 25-year sentence." Curry indicated her understanding. At one point, when Curry "looked puzzled" the court inquired about that puzzlement and explained the concept that Curry apparently had not understood. The court also explained the rights Curry would be waiving if she chose to plead guilty.
Following that lengthy exchange, Curry pled guilty to five counts of child endangering, against her three and six year old grandchildren. The court accepted her plea, found her guilty, and dismissed the remainder of the charges against her.
Curry's counsel did not present a presentence brief to the court, asserting that he had not had access to the CSB records that he needed to prepare such a brief. He asserted that the records would show that his client self-referred to CSB regarding the victims. The court accepted that assertion as true. He did not offer any additional suggestion as to what the records might have demonstrated in mitigation. He offered in mitigation that Curry had no prior criminal record and that she had several medical ailments, had minimal income, and had the victims dumped in her care. He also asserted that she "raised these children to the best of her ability. She did what she believed was right for the children." Curry's mother testified that Curry "kept these kids most of the time and I know she didn't mistreat them like they claim that she has[.]" Curry's brother testified that for the past twenty-eight years:
 [T]here has been what appears to be a continual involvement by the juvenile court system involving her three natural children and then eventually her two grandchildren[.] * * * [Her] children were removed from the home, placed back in the home, * * * if there were all these problems, then I am at a loss to understand why at some point she * * * was given custody of the child in question and plus another grandchild[.]:
He also testified that,
 I think she is basically a good person. I think she is like anybody else, has made mistakes. Those mistakes have not been done in such a way they are not known to other people, so I would ask that you view whatever those mistakes are in the context of this court proceeding and to see if those actions are any different than anyone else given her situation.
Curry also testified on her own behalf. She asserted that one of the victims was doing bizarre, destructive things. In response Curry locked her in her room "under the advice of Dr. Cragor Minor." She asserted that, "The child loved me, but she just had problems. I just couldn't handle her." She explained that "the only thing that I feel I am guilty of is loving my grandchildren, trying to take care of them the best I could with what I had[.]"
One of the witnesses for the state testified that:
 The home life that he had before when I would take him, it was filthy. I mean, there's dog poop all over the floors, and when he would come to my house * * * I would just strip [him] down, give him a bath and he would wear my son's clothes. When it was time for him to go home * * * he would start pulling his hair, screaming telling me he didn't want to go home, he wanted to stay with me.
The court made the following statement before it sentenced Curry:
 The record is clear and convincing that you have repeatedly, over a lengthy period of time, so mistreated these children that they are likely to be affected for the rest of their lives by the treatment that you have handed out.
 You have locked your grandchildren in the bedroom daily[.] * * * Because of your denial of the use of bathrooms, they were forced to defecate in the rooms where they were locked. The evidence is you tied them up for periods of time, that you taped their mouths shut. The young boy, three year old child, was repeatedly beaten with a strap or a paddle.
 The evidence establishes that you showed pornographic photographs and were witness, and the children were shown these photographs and were witness to your intimate relations with your live in boyfriend. The evidence convinces me that you overmedicated the children.
 You have continued to blame these children. You have blamed them and said they were hateful and spiteful. * * * There has been previous history with CSB which involved neglect of your own children. One of your daughters was removed from your home. At that time you said they were destructive and spiteful.
 It is clear that these children have experienced unspeakable terror and fear in their relationship with you, that they have had serious physical injury and health problems because of your treatment. They are now experiencing multiple psychological problems, and it is doubtful they will ever have a normal life because of what you have done to them.
 I find no mitigating factors whatsoever for this sort of mistreatment of young, innocent children. * * * I find there is the greatest likelihood that you will continue in such misconduct * * * and I find that consecutive terms are necessary to protect the public and to punish you for this misconduct. I find that consecutive sentences are necessary and not disproportionate to the danger that you pose to the community and these victims.
 I find that the harm in this case is so great that a single term would not adequately reflect the seriousness of your conduct, nor would it adequately reflect the seriousness that your continued misconduct poses to others in the community.
Each factual assertion in the soliloquy of the court is supported by the information contained in the confidential presentence report.
 II A. Ineffective Assistance of Counsel
To establish that trial counsel was so deficient that Curry was denied her right to counsel, and is entitled to a new trial because of it, she must demonstrate deficient performance, and prejudice resulting from that deficient performance. Stricklandv. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. The prejudice must reach such a level that it is reasonably probable that the professionally unreasonable performance caused her to lose what she otherwise would have won. United States v. Morrow
(C.A.6 1992), 977 F.2d 222, 229, certiorari denied (1993),508 U.S. 975, 125 L.Ed.2d. 668.
Curry has asserted that her trial counsel was ineffective because (1) he did not move to withdraw her guilty plea when the prosecutor made a "recommendation for maximum consecutive time[,]" in violation of her previous agreement with the prosecution; (2) he did not cause "the underlying agreement upon which the plea is based [to] be stated on the record in open court[;]" and (3) he should have presented more mitigating information at sentencing.
We assume, without deciding, that the performance of the trial counsel was deficient. Even assuming deficient performance, Curry is not entitled to a new trial unless she has established that she was prejudiced by the deficient performance of her counsel. The evidence, if it exists, that there was a prior plea agreement which was different than the one stated in court or that there was mitigating information that was not presented, but should have been, is necessarily outside the trial record.[1]
 [I]t is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record. For such cases, the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness. This procedure is through the post-conviction remedies of R.C. 2953.21.
State v. Cooperrider (1983), 4 Ohio St.3d 226, 228. Curry's first assignment of error is overruled.
 B.Voluntariness of Guilty Plea
In State v. Piacella, the Supreme Court of Ohio held that:
 Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.
State v. Piacella (1971), 27 Ohio St.2d 92, syllabus.
1. Voluntariness
Curry has urged this court to consider the affidavits attached to her appellate brief. Those affidavits assert, among other things, that she pled guilty only because her attorney informed her that the prosecution had promised not to ask for the maximum sentence. The affidavits are not part of the record, and cannot be considered on appeal. The facts asserted in the affidavits are contradicted by the plea colloquy that is contained in the record. As indicated in the above summary of the plea hearing, Curry specifically denied that promises or force motivated her plea. There is no evidence in the record that her plea was obtained by deception.
2. Presence of Counsel
Curry's counsel was present at the sentencing hearing.
3. Advice of Counsel
Curry was indicted on thirty-six charges; twelve first degree felonies, twelve second degree felonies, and twelve third degree felonies. She pled guilty to five third degree felonies, apparently on the advice of her attorney. In exchange, the state dropped the thirty-one additional charges, including twenty-four charges that were more serious than the ones to which she pled guilty. The sentencing implications of being convicted of five third degree felonies as opposed to thirty-six ranging from first degree to third degree felonies are discussed in more detail below. Assuming she pled guilty on the advice of her attorney, it was competent advice when measured against the information contained in the record.
4. Understanding of Charges and Waiver
Curry has urged this court to consider the affidavits attached to her appellate brief. Those affidavits assert, among other things, that she only pled guilty because her attorney informed her that the prosecution would not ask for the maximum sentence. The affidavits are not part of the record, and cannot be considered on appeal, and the facts asserted in the affidavits are contradicted by the plea colloquy that is contained in the record
The colloquy between the court and Curry indicates that she understood the nature of the charges against her, and the rights she was waiving in pleading guilty. The court adequately explored Curry's ability to understand the proceedings. Its inquiry included questions designed to determine whether Curry had any long or short term impairments that might hinder her comprehension. When Curry appeared confused at one point, the court observed, "You look a little puzzled. If you don't understand, that's all right. You need to tell me and I will rephrase the question[.]" After confirming that the concept of bad time was puzzling her, the court explained it in a different way. During that second explanation, when Curry indicated she did not understand a particular phrase the court explained it in yet another way. The exchange was a lengthy one, and included (1) determining whether Curry's counsel had adequately advised her and answered all of her questions; (2) reciting the rights Curry was waiving; (3) reciting the charges against her; (4) explaining the potential sentences that might be imposed; (5) explaining the possibility that her sentence could be increased if she misbehaved while incarcerated; and (6) explaining the possibility of being placed under community control upon release from prison. Every few sentences, the court asked Curry if she understood. On the few occasions when Curry indicated that she did not, a further explanation was given. The record indicates that Curry understood the charges against her, the potential sentence, and the rights she was waived by pleading guilty.
5. Motivation
Finally, Curry's motivation is not explicitly contained in the record, but it is clear that Curry could well have been motivated by the desire to seek a lesser penalty. Although she ultimately received the maximum penalty possible, at the time she entered her plea the court advised her that she could be sentenced to as little as one year for each conviction and that the sentences could made to run concurrently. In that event, the entire sentence would have been one year. She was also informed that if the maximum was imposed and she was ordered to serve the sentences consecutively she might be sentenced to twenty-five years. Had she been found guilty of all thirty-six charges, her minimum sentence would have been three years[2], and the maximum would have been far greater than twenty-five[3]. Given the disparity in potential outcomes, it is reasonably clear that she was motivated by her desire to obtain a lesser sentence.
6. Other arguments by Curry.
In addition, Curry has argued that her plea was not voluntary because her defense counsel did not have access to certain records from "CSB files and from Akron Child Guidance," and that because the defense counsel could not present that information at the sentencing hearing "the Court received a skewed view of Appellant's total circumstances, which need to be looked at to render a fair result at the hearings." While the information that Curry asserts her counsel was denied might have been relevant with regard to mitigation, it is completely irrelevant with regard to whether Curry's plea was knowing and voluntary.
Summation
 The record indicates that Curry's plea was freely made, in the presence of counsel whose advice was competent, with understanding of the consequences of her plea, and was likely motivated by the desire for a shorter sentence. Her second assignment of error is overruled.
Abuse of Discretion in Sentencing
 In order to impose consecutive sentences for convictions for multiple offenses, the court must find that
 (4) * * * [C]onsecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [that]
* * *
 The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
R.C. 2929.14(E)(4). In its journal entry, the court found that:
 [A] consecutive sentence is necessary because the harm to the victims is so great that a single term does not adequately reflect the seriousness of the offense [and] to protect the public and punish the offender, and is not disproportionate to the conduct and to the danger posed by the Defendant.
The court made the statutory findings necessary to support the imposition of consecutive sentences. See State v. Harper (Feb. 24, 1999), Summit App. No. 18916, unreported, at 3.
Curry has argued that it was an abuse of discretion for the court to make these findings. In order to find that the trial court abused its discretion, we must find that it acted in a manner that was "unreasonable, arbitrary, or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157.
A detailed summary of the sentencing hearing is contained above. The court, in sentencing Curry, noted that the children were "likely to be affected for the rest of their lives by the treatment that you have handed out." The statements of at least three professionals who have worked with the children support that factual assertion; the statements are contained in the presentence report. The court described Curry's treatment of the children as "one of the worst offenses that I have ever seen in my time on the bench." The victim impact statement in the presentence report contained similar descriptions of the impact of Curry's behavior on the children, which were made by the foster mother of one of the children and by the psychologist treating both children. It was not unreasonable, arbitrary, or unconscionable for the trial court to find that the harm Curry caused these children was so great that a single five year term did not adequately reflect the seriousness of the offense.
At her sentencing hearing, Curry stated:
 I have always tried to do the right thing, but it seems like what I try to do doesn't please everybody. * * * I can only go by what I feel is right, and I feel that God and I both know without a doubt that I did not mistreat those children.
 I did not starve them, I did not beat them. I clothed them,
 I fed them. I mean, what else could I do? I love my grandchildren with all my heart.
Curry pled guilty to, and was convicted of, five counts of child endangering. The actions which led to those convictions included locking the children in a room with boarded up windows and no overhead lights, forcing them to remain in the room after they defecated in it, beating the younger child repeatedly with a strap or a paddle, overmedicating the children, exposing the children to pornography and having sexual relations in the children's presence. The presentence report contains witness statements, which support each of these factual assertions. This abuse had been going on for up to six years.[4] Neither Curry nor her mitigation witnesses provided any evidence that would support leniency. Rather, Curry, and her witnesses, continued to assert that (1) Curry was a good person; (2) the claims against her were false; (3) her actions were not so bad; (4) she did what any other person in her position would have done; or (5) her actions were the fault of the "mean and hateful" children she pled guilty to endangering.
It was not unreasonable, arbitrary, or unconscionable for the trial court to find that a twenty-five year sentence was not disproportionate to the seriousness of this conduct. It was also not unreasonable, arbitrary, or unconscionable for the trial court to find, in light of such conduct, that a woman who says "the only thing that I feel I am guilty of is loving my grandchildren" poses a continued danger to any children with whom she might come into contact.
The evidence supports both statutory findings. Curry's third assignment of error is overruled.
 III
Curry's first assignment of error is overruled because the information contained in the record does not support her claim that her trial counsel was ineffective. Because a review of the Crim.R. 11 colloquy indicates that Curry's guilty plea was knowing and voluntary, her second assignment of error is overruled. Curry's third assignment of error is overruled because the presentence report and the testimony at the sentencing hearing support the trial court's imposition of consecutive sentences. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
SLABY, J., CARR, J. CONCUR.
[1] The affidavits attached to Curry's brief, attesting to truth of these assertions, are not part of the record on appeal.
[2] The minimum term for each first degree felony is three years, and the sentences may run concurrently. R.C. 2929.14(A)(1)
[3] A maximum of ten years may be imposed for each of the twelve first degree felonies, eight years for each of the twelve second degree felonies, and five years for each of the twelve third degree felonies. R.C. 2929.14(A). The court may require the sentences to run consecutively, without an apparent limit on the aggregate length.
[4] One child, who was six at the time of Curry's arrest, was placed with Curry when she was a month old. The other child was three at the time of Curry's arrest.