DECISION AND JOURNAL ENTRY
James Radcliff pled guilty to, and was convicted of, violating a Civil Protection Order ("CPO"), in violation of R.C.2919.27, theft, in violation of R.C. 2913.02, and misrepresenting identity, in violation of Akron City Code 136.15.[1] He has appealed from his conviction and sentence.
Radcliff has asserted that (1) he was denied the effective assistance of counsel and that the trial court erred by (2) denying his right to a speedy trial; (3) setting an excessive bond and revoking his house incarceration pending sentence, without notice or hearing; and (4) denying his motion to withdraw his plea of guilty prior to his sentencing.[2] We overrule all of Radcliff's assignments of error and affirm the judgment of the trial court.
 I
Radcliff was arrested on February 13, 1999, and charged with two counts of violating a CPO, one count of theft, and one count of misrepresentation of identity. One of the counts of violating a CPO was separately charged; the remaining counts represent the offenses charged in Case No. 99CRB1628.[3] On February 16, 1999, Radcliff pled "Not Guilty" to all counts in the instant case.
On May 17, 1999, Radcliff appeared in court with his attorney. He indicated he wished to withdraw his not guilty pleas and to enter guilty pleas to two counts of violating of a CPO, one count of misrepresenting identity, and one count of petit theft. In exchange for the guilty pleas, the state recommended that the trial court merge and dismiss two counts of violating a CPO and dismiss another count of menacing by stalking.[4] In addition it recommended that the court order a presentence investigation and place Radcliff under home incarceration prior to sentencing.
The court accepted Radcliff's plea and found him guilty. It ordered him placed on home incarceration. Two days after he entered his guilty plea, the court ordered Radcliff recommitted in lieu of a $100,000/10% bond. Between May 24, 1999, and May 26, 1999, Radcliff made approximately forty attempts to reach his attorney in order to "withdraw [his] guilty plea prior to the sentencing date but [his] attorney failed to respond." After the court accepted his plea, and before it sentenced him, Radcliff wrote to the court about his communication problems with his attorney.[5] Radcliff apparently remained in custody until his sentencing hearing on June 28, 1999.
At his sentencing hearing the following exchange took place:
 MR. GATSKIE: Your honor, preliminarily, I've been asked by Mr. Radcliff to ask you to vacate his pleas.
THE COURT: And what's the reason for that?
 MR. RADCLIFF: I spoke with the Probation Department, and a couple of these charges I [pled] guilty to, but I wasn't really guilty to them. Okay? Uh, Probation Department, and I know my past record isn't very good, okay? And uh, he persuaded me to, you know, not plead guilty to something that I wasn't guilty of. I am guilty of a couple of them. Okay.
 THE COURT: So what is it that you're alleging that you're not guilty of?
 MR. RADCLIFF: Well, I know I'm guilty of violation of the TPO and the CPO. Okay. Uh, I am guilty of misrep. Uh, what other charge is there?
 THE COURT: The only other one is the Petit Theft.
 MR. RADCLIFF: That's pretty much it. The other ones[. . .]
At that point, Radcliff appeared confused as to what offenses he had committed, or had pled guilty to. He did later assert that "there was a Petit Theft that I wasn't really guilty of." The court responded, "the court's going to deny the motion at this time."
At the sentencing hearing, Radcliff admitted that his "past record isn't very good." When it sentenced him, the trial court noted that his criminal record was "extensive," and contained "numerous offenses of violence." The court specifically noted that he had been convicted of felony aggravated assault, and misdemeanor assault.
 II Ineffective Assistance of Counsel
Radcliff has asserted that his trial counsel was ineffective because (1) he did not adequately represent his client when he permitted Radcliff to plead guilty without raising speedy trial issues; and (2) he did not zealously advocate for his client.
To establish that trial counsel was so deficient that Radcliff was denied his right to counsel, and is entitled to a new trial because of it, he must demonstrate both deficient performance and prejudice resulting from that deficient performance. Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. The prejudice must reach such a level that it is reasonably probable that the professionally unreasonable performance caused him to lose what he otherwise would have won.United States v. Morrow (C.A.6 1992), 977 F.2d 222, 229,certiorari denied (1993), 508 U.S. 975, 125 L.Ed.2d 668. That demonstration of both deficient performance and prejudice must be based on the record. State v. Cooperrider (1983), 4 Ohio St.3d 226,228. When the determination cannot be made without reference to facts outside the record, "the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness. This procedure is through the post-conviction remedies of R.C. 2953.21." Id. at 228.
 1. Guilty Plea
Radcliff has asserted that his guilty plea, after the expiration of the speedy trial period, demonstrates that his counsel was ineffective. The decision to plead guilty to charges after the speedy trial period has passed, in exchange for the dismissal of other charges may, however, be a valid trial strategy. State v. Dumas (1996), 75 Ohio St.3d 455, 456. The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 80 L.Ed.2d at 694. Unless Radcliff has established that the strategy was so objectively unreasonable as to rebut the strong presumption that his counsel's conduct was reasonable, this court will not second guess his counsel's trial strategy decisions. See State v. Mason
(1998), 82 Ohio St.3d 144, 157, certiorari denied (1998),52 U.S. 1057, 142 L.Ed.2d 562.
Radcliff was arrested and charged with four misdemeanors of the first degree on February 13, 1999. He pled guilty to those charges ninety-three days later, on May 17, 1999. Because he was charged with misdemeanors of the first degree, he was entitled to be brought to trial within ninety days of his arrest. R.C.2945.71(B)(2). Nonetheless, there are circumstances under which an individual would find it preferable to plead guilty to charges on which he could no longer be convicted in exchange for the dismissal of other pending charges.
Radcliff has asserted, on appeal, that, "It defies common sense to assert that [he] waived his speedy trial rights. Had [he] known that there was a possibility that charges against him would be dismissed, he would never have entered a plea of guilty to those charges." Had Radcliff not pled guilty, he would almost certainly have been entitled to the dismissal of the four charges. At most, then, Radcliff could have been convicted of committing the three remaining misdemeanor offenses. By pleading guilty, Radcliff was convicted of committing four misdemeanor offenses.
Because of this, we describe one scenario that is a plausible trial strategy and is consistent with the record. Based on the record, we know that Radcliff pled guilty to four misdemeanors of the first degree. In exchange, three other misdemeanor charges were dismissed. The record demonstrates that he has an "extensive" criminal history, including at least two assault convictions. It is not clear from the record whether the plea bargain resolved all of the pending charges, or whether there are others still pending.
Two of the charges to which he pled guilty were identical to two of the three dismissed charges, so there could be no benefit to this portion of the bargain. In addition, he pled guilty to charges of petit theft and misrepresenting identity. The charge that was dropped was menacing by stalking, in violation of R.C.2903.211. Menacing by stalking, as a first offense, is a misdemeanor of the first degree. R.C. 2903.211(B). A conviction for menacing by stalking elevates a subsequent violation of the same statute to a felony of the fifth degree. Id. The record does not exclude the possibility that Radcliff was previously convicted of menacing by stalking, nor does it exclude the possibility that another menacing by stalking charge is still pending. If either of those circumstances existed, Radcliff faced the likelihood of being convicted of a felony rather than a misdemeanor. In that event, it would have been a reasonable trial strategy for Radcliff to plead guilty to misdemeanor charges in order to avoid the possibility of a felony conviction.
Given the existence of at least one scenario under which his counsel's performance is objectively reasonable, Radcliff has not rebutted the strong presumption that the conduct of his counsel was reasonable. He cannot do so without referring to facts outside the record. Because of this, the appropriate means for Radcliff to challenge his counsel's asserted ineffectiveness is through postconviction remedies of R.C. 2953.21.
 Zealous Advocacy
Radcliff has also asserted that his counsel was ineffective because his counsel (1) failed to request a hearing when the plea agreement entered into was not honored; (2) failed to communicate with him following the plea hearing; and (3) failed to advocate his request to withdraw his guilty plea.
The plea agreement provided that Radcliff would plead guilty to four misdemeanors of the first degree. In exchange the state agreed to move to dismiss three other charges. In addition, construed liberally, the agreement also provided that "the prosecution would recommend that a presentence investigation be conducted" and would "recommend at this time that the defendant be placed under home incarceration prior to his sentencing." The state moved the court to dismiss the three charges and it recommended both the presentence investigation and the home incarceration. The court granted the motions to dismiss the charges, and ordered the presentence investigation. It initially ordered home incarceration, but revoked Radcliff's bond shortly thereafter. There is nothing in the record to indicate that Radcliff was promised that he would be granted home incarceration pending sentencing. Nor did the record indicate a promise that home incarceration, if granted, would never be revoked. Radcliff received the benefit of his plea bargain. Even if his counsel's performance in this respect was deficient, he was not prejudiced by it.
Radcliff's second assertion, relating to his counsel's failure to communicate with him, suffers the same defect as his assertion that his counsel was ineffective because he permitted Radcliff to plead guilty to charges after the speedy trial period on those charges had expired. Prejudice cannot be established without resort to facts outside of the record.
The failure of Radcliff's counsel to respond to any of his phone calls between the plea hearing and the sentencing hearing a month and a half later is not appropriate conduct; it is possible that it even rises to the level of deficient performance. Assuming, arguendo, that his performance was deficient, Radcliff must also demonstrate that the deficient performance resulted in prejudice. Based on the facts contained in the record, the court did not abuse its discretion in denying Radcliff's motion to withdraw his guilty plea. See infra at ___. Radcliff may be in possession of facts that are compelling enough that the court would have granted his motion to withdraw his guilty plea. In that event, the failure of Radcliff's counsel to communicate with him might have resulted in prejudice. Assuming those facts exist, they are necessarily outside the record. The appropriate means for Radcliff to bring the matter to the attention of the court is through postconviction motions pursuant to R.C. 2953.21.
Radcliff has also asserted that his trial counsel should have argued that he failed to receive the benefit of his plea bargain in support of his motion to withdraw his guilty pleas. Because Radcliff received the benefit of his bargain, discussedsupra at ___, no prejudice resulted from the failure of his counsel to advance this argument.
Finally, Radcliff has asserted that his counsel should have argued that "there were issues concerning the credibility of the alleged victim of some of these charges." In support of this he points to comments his counsel made about the ongoing relationship between Radcliff and the victim, which appear in the transcript of the plea hearing. Because the source of concern was the victim's ongoing relationship with Radcliff, it is clear that Radcliff knew about any potential weakness in the credibility of the witness against him at the time he entered his plea of guilty. It is not reasonably probable that the failure of Radcliff's attorney to argue concerns about the credibility of the victim caused Radcliff to lose a motion he would otherwise have won.
 Summary
Radcliff has not demonstrated that his counsel performed deficiently by permitting him to plead guilty to four charges beyond the end of the speedy trial period. Assuming, for the sake of argument, that his counsel's conduct after the plea hearing was deficient, Radcliff has not demonstrated that he was prejudiced by that performance. Radcliff's first assignment of error is overruled.
 Speedy Trial
Radcliff has asserted that because he was charged with misdemeanors of the first degree, he was entitled to be brought to trial within ninety days of the date of his arrest. R.C.2945.71(B)(2). Pursuant to the Rules of Criminal Procedure, the court "shall not accept such plea without first addressing the defendant personally and informing the defendant of the effect of the [plea] of guilty * * * and determining that the defendant is * * * voluntarily" pleading guilty to a misdemeanor involving a serious offense. Crim.R. 11(D). In addition, the record must affirmatively demonstrate that a meaningful dialog took place when it accepted the pleas. State v. Joseph (1988), 44 Ohio App.3d 212,213.
The court spoke directly to Radcliff when he pled guilty on the ninety-third day after his arrest. It informed Radcliff that he was pleading guilty to misdemeanors which each included the "possible maximum penalty of six months in the Summit County Jail and $1000 fine." In addition, it explained the various trial rights Radcliff was waiving by his guilty plea. After asking for individual pleas to each of the four offenses, and receiving the response "Guilty" to each, the court found that Radcliff had "voluntarily entered those pleas." The court complied with both the procedural and constitutional requirements that are preconditions for accepting a guilty plea to a serious offense misdemeanor from a represented defendant.
Radcliff has also asserted that he did not waive his right to a speedy trial when he pled guilty. In general, that assertion is incorrect. Under most circumstances, an individual who pleads guilty waives his right to appeal speedy trial issues. Montpelierv. Greeno (1986), 25 Ohio St.3d 170. Radcliff has asserted that his guilty plea was a consequence of the deficient performance of his counsel and that, because of this, the court should find that this case is the exception to the general rule. On review, this court is limited to facts contained in the record. App.R. 12. Even if an ineffective assistance of counsel exception to the general rule exists, as suggested in footnote 5 of Montpelier, it would not apply here because Radcliff's assertion that his counsel was ineffective cannot be established from the record. Radcliff has not offered any compelling reasons, which the record supports, for permitting an exception to the general rule.
Radcliff's second assignment of error is overruled.
 Excessive Bond
Radcliff has asserted that his constitutional rights were violated when the trial court set his postconviction bond at $100,000/10%. Whether or not he is correct in this assertion, the proper means to challenge an excessive bond was through a habeas corpus action. See, generally, State ex rel. Pirman v. Money
(1994), 69 Ohio St.3d 591. Radcliff's third assignment of error is overruled.
 Denial of Motion to Withdraw Guilty Plea
Radcliff has asserted that the trial court abused its discretion when it refused to permit him to withdraw his guilty plea prior to sentencing. Once a guilty plea is entered, a defendant does not have an absolute right to withdraw it. Statev. Xie (1992), 62 Ohio St.3d 521, paragraph one of the syllabus. Before he is sentenced he may make a motion to withdraw a guilty plea. Crim.R. 32.1. The Supreme Court of Ohio has agreed that such motions are to be freely allowed and treated with liberality.Xie, 62 Ohio St.3d at 526. In reviewing the motion, the trial court is to conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.Id. at paragraph one of the syllabus. Once the trial court has granted or denied such a motion, however, appellate review is limited to a determination of whether the trial court abused its discretion in reaching that decision. Id. at 527. Unless the trial court acted unreasonably, unconscionably, or arbitrarily, it did not abuse its discretion. State v. Adams (1980), 62 Ohio St.2d 151,157.
The basis of Radcliff's motion is that he "spoke with the Probation Department and a couple of these charges I [pled] guilty to, but I wasn't really guilty to them." Based on the transcript of the hearing, Radcliff clearly admitted he was guilty of committing three of the four offenses with which he was charged. With respect to the fourth, his testimony was ambiguous. After admitting his guilt to the first three, he asked, "Uh, what other charge is there?" The court responded, "The only other one is Petit Theft." Radcliff responded, "That's pretty much it. The other ones[. . .]" These comments can reasonably be interpreted as an admission that he committed the final offense, as well.
On appeal, Radcliff has emphasized that the court was "aware that defense counsel had failed to communicate with his client or his [client's] family" and should have specifically inquired about the attorney-client relationship. Radcliff appeared in court with his attorney at the hearing. Radcliff's attorney indicated that he had been asked by Radcliff to move that the pleas be vacated. From this exchange it appears that, despite whatever difficulties they may have had in the past, Radcliff's attorney was acting at Radcliff's direction after speaking with him.
In light of the above, it was not unreasonable, arbitrary, or unconscionable for the trial court to deny Radcliff's motion to withdraw his guilty pleas. Radcliff's fourth assignment of error is overruled.
 III
Because Radcliff cannot demonstrate that his counsel was ineffective without reference to facts outside the record, his first assignment of error is overruled. His second assignment of error is overruled because his guilty plea acted as a waiver of his right to a speedy trial. We overrule his third assignment of error because a direct appeal is not the appropriate means to challenge an excessive presentence bond. Because the trial court did not abuse its discretion when it denied Radcliff's motion to vacate his guilty pleas, Radcliff's fourth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 ________________________________ WILLIAM R. BAIRD, FOR THE COURT.
BATCHELDER, P.J. and WHITMORE, J. CONCUR.
[1] In a separate case, pled simultaneously, he was convicted of violating a Temporary Protection Order ("TPO")/CPO, in violation of R.C. 2919.27. Because the charging instrument and the lower court used the term TPO interchangeably with CPO, and because there is no material distinction with respect to this appeal we use CPO to refer to both.
[2] Radcliff's third and fifth assignments of error are combined here as the third assignment of error, because both challenge the constitutionality of his postconviction bond and confinement pending sentencing.
[3] Although the record is unclear as to how the cases are linked, several documents in the record refer jointly to Case No. 99CRB1628, the instant case, Case No. 99CRB1103, the separate count of violating a CPO, Case Nos. 99CRB3087, and 99CRB3666.
[4] The court certification on the App.R. 9(C) statement indicates that it "is a complete and accurate representation of the proceedings in the case of State of Ohio v. James Radcliff, Case No. 99CRB1628, 99CRB3666 and 99CRB3087." The record does not indicate which charges were contained in which cases, nor does it indicate whether the pleas completely disposed of Case Nos. 99CRB3666 and 99CRB3087, or of Case No. 99CRB1103.
[5] Radcliff sent a letter to the court prior to the hearing. Although the letter is not included in the record, the court supplemented the record with Radcliff's affidavit that reflects the "substance of a letter sent to the court prior to his sentencing date."