The STATE of Ohio, Appellee,

v.

HENSLEY, Appellant.

[Cite as *State v. Hensley* (2001), 145 Ohio App.3d 639.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 01CA007796.

Decided Sept. 12, 2001.

640

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Jonathan E. Rosenbaum,* Assistant Prosecuting Attorney, for appellee.

*Lisa I. Swenski,* for appellant.

BAIRD, Presiding Judge.

Larry R. Hensley appeals from the judgment entry of conviction and sentencing entered in the Lorain County Court of Common Pleas, which found him guilty of engaging in a pattern of corrupt activity and possession of criminal tools. This court affirms.

I

On November 2, 1999, the Amherst Police Department executed a search warrant to search the residence of Larry Hensley and his wife Carol, in Lorain County, Ohio. The officers removed computers, mail machines, and flyers that the Hensleys used to perpetrate a scam on consumers in Ohio and elsewhere, under the name "Cash Free Grants." The flyers announced that private foundations exist which give cash grants to persons who have financial need. The brochures stated that "[p]ersons who have poor credit * * * are able to get money that they need...BY MAIL ...sent to them by check, payable to them, because foundations are not interested in Credit Ratings." (Ellipses added in part.) According to the flyers, for a fee of $39, Hensley's program would "Match Your Financial Needs and Requirements With the Most Suitable Private Foundations in Our Program."

In reality, Hensley sent people a brochure only listing various legitimate foundations. Hensley made no effort to match individual participants with individual foundations, as the flyers promised. The foundations listed in Hensley's brochure are prohibited by law from making grants to individuals. Needless to say, the foundations listed in Hensley's brochures were not "in [Hensley's] program." According to the state, Hensley's scam garnered over $300,000 for a five-year period, and the state conservatively estimated that it could ultimately prove that Hensley collected over $500,000 for that period. It was clear from the brochures themselves that Hensley was targeting people in desperate need of money for basic necessities, and that they were asked to part with their money in exchange for a promise of help that was not and could not be fulfilled. Over a period of seven months during 1999, Hensley had paid over $82,000 for a mass

postage rate of eighteen cents per piece, meaning that he could mail over 450,000 brochures.

On June 7, 2000, the Lorain County Grand Jury returned a two-count indictment, charging Hensley with one count of possessing criminal tools, in violation of R.C. 2923.24(A), and one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), with a predicate offense of theft by deception, in violation of R.C. 2913.01(A) and (C) and R.C. 2913.02.

Amherst police officers worked in conjunction with the United States Postal Inspector to verify that Hensley's scam was operating. After the initial search, Hensley signed a consent agreement stating that he would have all his mail sent to a post office box, rather than to his home, so that officials could monitor his mail. According to the state, Hensley stopped using the mails to receive the payments from consumers, and used telephone registration and credit card payment instead, to avoid further detection by the authorities. On July 11, 2000, the grand jury returned a supplemental indictment, adding another count of each offense, based on Hensley's ongoing scam.

Hensley pled not guilty and retained counsel. The trial court initially ordered $500,000 bond, based on the large amount of money involved and the widespread nature of Hensley's operation. Defense counsel moved for a bond reduction, and the bond was reduced to $175,000. Hensley could not afford even the reduced bond and remained in jail. At some point, Hensley came to believe that defense counsel was not serving him well, and he sought another attorney. Initially, the new counsel agreed to represent Hensley for the limited purpose of seeking a bond reduction.

With only three weeks remaining until trial, Hensley fired his counsel and his new counsel took over the entire case. New counsel attempted to get a continuance for the trial. Because the trial date had already been set for three months by that time, the trial court denied the continuance over counsel's objections. Defense counsel filed motions for discovery sanctions and for reconsideration of the continuance matter, among other things. Counsel's motions were denied, although the trial court ultimately continued the trial for one week.

Ultimately, the case came on for trial on December 5, 2000, only five weeks after defense counsel first filed a notice of appearance. On the day scheduled for trial, defense counsel again renewed the motion for a continuance, which was once again denied. While the jury list was being assembled, the prosecutor and defense counsel met with the defendant. Hensley agreed to plead no contest to the facts as alleged in the indictments, bill of particulars, and discovery statements. The court then advised Hensley of the constitutional rights he was waiving by his no contest plea, as well as the consequences of such a plea. Hensley pled no contest and the judge found him guilty on all charges.

The case proceeded to sentencing on February 5, 2001. The judge issued concurrent sentences of five years each on the two counts of engaging in a pattern of corrupt activity, and eight months each on the two counts of possessing criminal tools. The five-year sentence on the felony charges was more than the minimum sentence. Hensley did not have a prior criminal record.

Hensley filed the instant appeal, assigning ten errors for our review. We have rearranged the assignments of error for ease of discussion.

## II

"Assignment of Error No. 1:

"The trial court abused its discretion in failing to grant appellant's motion for a continuance to allow counsel time to prepare a defense, thereby denying appellant's rights to due process and effective counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"Assignment of Error No. 2:

"The prosecutor violated appellant's rights to due process and to confront witnesses against him when the prosecutor refused to disclose/list appellant's accusers/witnesses, in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, comparable provisions of the Ohio Constitution, and Ohio Rule of Criminal Procedure 16(B)(1)(e).

"Assignment of Error No. 3:

"The trial court violated appellant's rights to due process and to confront witnesses against him when the trial court refused to order sanctions against the prosecutor or to grant appellant's motion for a continuance based on lack of availability of discovery, thus forcing appellant to proceed to trial without benefit of knowledge of even the *names* of his accusers and other relevant and necessary information, in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, comparable provisions of the Ohio Constitution, and Ohio Rule of Criminal Procedure 16(B)(1)(e)."

"Assignment of Error No. 5:

"Appellant's due process rights pursuant to the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and comparable provisions of the Ohio Constitution were violated by the cumulative effect of: (1) his first trial counsel's failure to prepare appellant's defense—whether such conduct is adjudicated to be ineffective assistance or not; (2) the prosecutor's willful denial or negligent failure to provide defense proper discovery with respect to the state's witness list; and (3) the trial court's subsequent, persistent, and unexplained refusal to grant

appellant's motion for a continuance in order to allow appellant's new counsel time to prepare for trial."

"While a plea of no contest is not an admission of guilt, it is an admission of the truth of the facts alleged in the indictment." *State v. Benson* (Mar. 31, 1992), Wood App. No. 90WD102, unreported, 1992 WL 66563, citing Crim.R. 11(B)(2). However, pursuant to Crim.R. 12(H), a "plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence."

■ However, our review of rulings on pretrial motions is limited to situations where the denial of the motion would be dispositive of the action. *State v. Brown* (Apr. 26, 1999), Athens App. Nos. 98CA14 and 98CA15, unreported, 1999 WL 281335, citing *State v. Ulis* (1992), 65 Ohio St.3d 83, 600 N.E.2d 1040.

## A. CONTINUANCE

■ The first pretrial ruling was the refusal to grant a continuance after Hensley changed counsel two weeks before trial, as raised in the first, third, and fifth assignments of error. Because the instant case never proceeded to trial and therefore the evidence does not appear in the record before this court, it is impossible for this court to determine whether the denial of a continuance actually resulted in prejudice because Hensley's new counsel needed to review the evidence.

Assignments of Error Nos. 1, 3, and 5, as they relate to the denial of a continuance, are overruled.

## B. DISCOVERY SANCTIONS

■ Hensley's decision to change counsel less than two weeks before the scheduled trial date resulted in yet other untoward results. Hensley's new counsel raised the issue of the quality of the prosecution's compliance with the discovery order. The order was issued on June 27, and the state filed its reply on July 10. From that date until the second defense counsel took over the case on November 13, the defense did not challenge the state's response to the discovery order. In fact, the defense had not complied with the discovery order directed to it.

Once again, because Hensley chose to plead no contest to the facts as alleged, the quality of the prosecution's compliance with the discovery order cannot be properly discerned by this court. See *Brown*, Athens App. Nos. 98CA14 and 98CA15, unreported. Thus, we are unable to find prejudice in the state's response to the discovery order (Assignment of Error No. 2) nor can we engage in a meaningful review of the trial court's decision not to exclude the state's

evidence for the state's alleged violation of the discovery order (Assignment of Error No. 3).

## III

"Assignment of Error No. 6:

"The trial court erred when it did not timely disclose to the state and never disclosed to the defense the fact that appellant had improperly sent letters to the trial court judge discussing the case at hand. The trial court's failure to forward a copy of the letter to the state violated appellant's discovery rights, pursuant to Ohio Criminal Rule 16, with respect to defendant statements and also violated appellant's due process rights, pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution and comparable provisions of the Ohio Constitution."

"Assignment of Error No. 10:

"The trial court's conduct and comments throughout the prosecution of appellant's case demonstrated a bias against appellant that violated his due process rights under the U.S. and the Ohio Constitutions."

As to the trial court's bias as alleged in Assignment of Error No. 10 and elsewhere, this assertion is meritless. Hensley recites statements of the court out of context and considers this as evidence of the judge's bias. For example, at the bond hearing, the judge mentioned in passing that he was aware of accounts in the media about this case but asked both sides to present evidence relating to the issue of setting bond. Hensley now suggests that the judge was clearly biased by the news accounts. To the contrary, the judge clearly stated that he wanted the parties to inform him fully of their view of the matter. Our review of the court's pretrial and post-trial disposition of matters in this case indicates that the court acted within its sound discretion in dealing with these issues. Assignment of Error No. 10 is meritless and we overrule it.

Assignment of Error No. 6 asserts that the trial court released to the state a letter written by Hensley to the judge after the bail reduction was denied. The letter, later disclosed by the prosecution to Hensley, stated that Hensley planned to plead guilty anyway and asked the judge to reduce bail. While it would have been better practice for the court to have disclosed the letter to both sides at the time the letter was received, Hensley has waived this issue. This court cannot consider on appeal an error which a party failed to bring to the attention of the trial court at a time when the error could be corrected. *State v. Glaros* (1960), 170 Ohio St. 471, 11 O.O.2d 215, 166 N.E.2d 379, paragraph one of the syllabus.

The record indicates that Hensley never asked judge to recuse himself because of the possible bias induced by this letter. Consequently, the sixth assignment of error is likewise overruled.

## IV

"Assignment of Error No. 4:

"Appellant was denied the effective assistance of counsel when his first trial counsel engaged in conduct which included, but was not limited to, failure to communicate with appellant; failure to meet with and keep appellant informed; failure to timely prepare for trial; failure to allow appellant to participate in his own defense; failure to review the state's evidence—which filled three rooms in the local police department; failure to bring to the court's attention the lack of names or other identifying data of alleged victims listed/not listed on the state's discovery filings; failure to review defense evidence including hundreds of refunds issued to alleged victims by appellant. Such conduct violated appellant's rights under the Sixth Amendment to the U.S. Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution."

The fourth assignment of error states that Hensley was denied effective assistance of counsel. Hensley states that his first counsel failed to communicate with him on a regular basis, failed to prepare for trial, failed to review the state's evidence, and failed to bring to the court's attention the prosecution's alleged failure to fully comply with the discovery order.

A criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To prevail on appeal on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient and that defendant suffered prejudice from the deficient performance. *Akron v. Radcliff* (May 3, 2000), Summit App. No. 19704, unreported, 2000 WL 530352, at 4–5, citing *Strickland* at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish prejudice, the defendant must demonstrate that it is reasonably probable that the professionally unreasonable performance caused him to lose what he otherwise would have won. *Radcliff, supra,* at 5, citing *United States v. Morrow* (C.A.6, 1992), 977 F.2d 222, 229, certiorari denied (1993), 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668.

On direct appeal, a defendant may raise only matters that can be determined by reference to the record. See *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 4 OBR 580, 448 N.E.2d 452. The first counsel's consultation with Hensley and counsel's trial preparation are dehors the record, and therefore are not properly raised in a direct appeal. *Id.* Only counsel's failure to timely

challenge the prosecution's discovery compliance is actually in the record. Even assuming that this failure, viewed in isolation, fell below a professionally reasonable standard, we cannot say that had original defense counsel been allowed to prosecute the defense throughout that this matter would likewise be viewed as ineffective. Hensley had a constitutional right to change counsel mid-stream. However, we cannot attribute any prejudice to counsel's action where counsel was not allowed to see this case to the end.

The fourth assignment of error is not well taken and it is overruled.

V

"Assignment of Error No. 9:

"Appellant's conviction for engaging in a pattern of corrupt activity, based on the predicate offense of theft by deception, violates appellant's constitutional rights because the state's description of the 'criminal' conduct underlying the predicate offense does not describe any crime under the Ohio Revised Code."

In his ninth assigned error, Hensley claims that notwithstanding his no contest plea conceding the facts as alleged, the state has not described a crime when it charged Hensley with theft by deception as the predicate offense. Hensley claims that there is no such crime as "theft by deception" in the Ohio Revised Code. If the facts as alleged do not constitute a crime, Hensley's conviction is not supported by sufficient evidence.

However, the argument is not well taken. R.C. 2913.02(A)(3) prohibits theft by deception. The statute reads:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"* * *

"(3) By deception[.]"

R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

Thus, the state was required to prove beyond a reasonable doubt that Hensley (1) knowingly (*i.e.*, with the awareness that such circumstances probably exist, R.C. 2901.22[B]), (2) deprived the victims of their money, and (3) by using a "false or misleading representation * * * that creates or perpetuates a false

impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

Hensley pled no contest, thus conceding the facts alleged by the state that (1) Hensley purposefully solicited money in exchange for matching the victim's financial needs with foundations willing and able to give the person a cash grant, (2) Hensley received the money, (3) Hensley never matched the person with a participating foundation, and (4) the foundations listed on Hensley's brochures are prohibited by law from actually giving grant moneys to individuals. Hensley's brochures stated that the foundations listed would indeed send a check to individuals whose needs matched the purpose of the particular foundation. Clearly, the undisputed facts are sufficient to establish theft by deception.

Hensley takes exception to a few words contained in the indictment that Hensley's victims received a brochure of "little or nothing of value" in return for $39. Hensley asserts that consumers are often induced to purchase products of little value and that this is not a crime. However, Hensley's solicitation clearly stated that in exchange for $39 the participants would be matched with foundations, not that participants would receive a brochure of little or no value.

Hensley's ninth assignment of error is meritless and it is overruled.

## VI

"Assignment of Error No. 7:

"The trial court violated appellant's rights to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution and comparable provisions of the Ohio Constitution when it relied on (1) incompetent, immaterial, and irrelevant evidence—in the form of three letters from three 'grant' foundations; and (2) confidential letters neither placed into the record, nor provided to appellant for his review and rebuttal, as its primary justifications for sentencing appellant to a prison term."

"Assignment of Error No. 8:

"The trial court erred in violation of the purposes and principles of the sentencing guidelines of the Ohio Revised Code Chapter 2929 and in violation of due process and equal protection when it imposed a prison sentence of five (5) years upon appellant."

Hensley's last two assignments of error deal with his sentencing. First, he challenges the trial court's reference to three letters sent from foundations listed in Hensley's brochures about scams such as Hensley's. The prosecution attached the letters to its sentencing memorandum, filed prior to the sentencing hearing. At the hearing, the judge read parts of the letters aloud.

Hensley now claims that the letters were not relevant because they represent only three foundations of the many on Hensley's list, rather than all of the foundations. Hensley also states that "[a]ppellant did not contest the fact that *some* foundations on the list may not have given grants to individuals." (Emphasis added.) Having pled no contest to the facts, Hensley may not now challenge the facts as alleged by the state. See Crim.R. 11(B)(2). Furthermore, Hensley concedes that R.C. 2929.13(A)(1) allows the state to introduce relevant information at the sentencing hearing. Hensley has not cited any law to support his contention that because each and every foundation on Hensley's list did not write a letter in this matter, the judge could not reference the information provided by the three foundations which did write. Hensley also challenges the hearsay quality of the letters. However, it is well settled that the Rules of Evidence do not strictly apply to sentencing hearings. See *State v. Cook* (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570, citing Evid.R. 101(C).

Hensley's seventh assignment of error is meritless, and it is overruled.

As to the length of the sentence, Hensley directs this court to the sentencing guidelines contained in R.C. 2929.14(B). According to the statute, the sentence for a second-degree felony shall be two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2). In the instant case, Hensley was sentenced to a five-year term. A court must impose a minimum sentence for a first-time offender, "unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B). In the instant case, the court found in the judgment of conviction and sentencing that the shortest term would demean the seriousness of the conduct and would not protect the public. This meets the standard required by the statute. See *State v. Riggs* (Oct. 11, 2000), Summit App. No. 19846, unreported, 2000 WL 1507914, at 2–5, citing *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

As to Hensley's equal protection issue, since he makes no effort to argue his point this court will not address it. See App.R. 12(A)(2). Hensley's eighth assignment of error is overruled.

## VII

Having overruled all the assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

BATCHELDER, P.J., and SLABY, J., concur.