[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
After a trial to the court, the defendant-appellant, Adolphous Colbert, was convicted of one count of robbery and one count of impersonating a peace officer. Colbert raises two assignments of error on appeal.
In the first assignment of error, Colbert contends the trial court erred when it overruled his motion for acquittal, because there was insufficient evidence demonstrating that force was used during the robbery, an essential element, as well as insufficient evidence to support his conviction for impersonating a peace officer. A Crim.R. 29 motion should not be granted "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.[1] In ruling on a motion for acquittal, the trial court must view the evidence in a light most favorable to the state.[2] In the review of a record for sufficiency of the evidence to support a conviction, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[3]
The robbery statute, R.C. 2911.02(A)(3), provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another."
R.C. 2921.51(E) provides that "[n]o person shall commit a felony while impersonating a peace officer, a private police officer, or an officer, agent, or employee of the state."
Shortly after midnight on March 20, 2001, Officer Bley and Specialist Vogelpohl were on patrol in an unmarked police car when they saw the victim on the sidewalk with his back to co-defendant Gary Martin, his hands flat on the wall so as to be unable to reach for anything, and his legs slightly spread with his weight shifted a little bit forward, similar to "where we would pat down someone." Officer Bley testified that Martin had a radio in his right hand, "kind of like on the guy's shoulder with the other hand he was feeling alongside the right-hand side of the victim's body." He testified, "We thought maybe it was our vice guys." He further testified, "We thought it could have been possibly a street corner vice and maybe he had stopped someone. Nothing came over the radio, but sometimes that still happens that they jump out on someone. So we thought there was maybe some kind of arrest." Colbert was also seen at this time sitting in the driver's seat of a car parked near the men on the sidewalk holding a radio in his left hand on the steering wheel. It appeared to Officer Bley that Colbert could have been talking into the radio.
The officers pulled into a store's parking lot approximately twenty feet away, got out of the car, and started walking towards where the victim stood against the wall with his back to Martin. It was at this time that Martin got in the car with Colbert, who immediately drove away from the scene.
Based on information received from the victim left standing on the sidewalk, the perpetrators' car was stopped a short time later. Martin fled on foot, but Colbert was returned to the crime scene. Both radios were recovered, and they worked in conjunction with each other.
Regarding the robbery conviction, in his appellate brief, Colbert's counsel concedes that the evidence was sufficient to show that Colbert was criminally liable for the acts of the co-defendant Gary Martin and that there was sufficient evidence of a theft offense in that Martin removed forty dollars from the victim without the victim's consent. While the use of force or the threat of force is contested, the testimony shows that the victim was kept facing the wall, hands on the wall, while Martin's one hand clearly remained on the victim's shoulder during his physical search of the victim with the other hand. Unquestionably, it would be foolhardy to physically challenge one who is believed to be an officer while he searches one's person with one hand and whose other hand is resting on one's shoulder holding a radio next to one's head. And, in this case, even the real officers driving by the scene that night thought that Martin was a police officer.
The gist of the conduct in impersonating a police officer, as proscribed by R.C. 2921.51, is really "the fraud of making a person believe that the actor enjoys a certain status or identify other than that which he, in actuality, possesses."[4]
Clearly, based on the testimony of the real police officers, they thought that Martin and Colbert were vice officers, having observed Martin frisking the victim, face to the wall with hands on the wall, while Martin and Colbert held radios suggestive of a common means of communication. They pulled into the parking lot and headed on foot back to the scene, in part, because of their suspicion.
Having reviewed the record, we disagree with Colbert and hold that the robbery and impersonating-a-peace-officer convictions were supported with sufficient evidence. Accordingly, we overrule Colbert's first assignment of error.
In the second assignment of error, Colbert contends that his counsel rendered ineffective assistance. Colbert claims that he was offered the opportunity to plead to a fourth-degree misdemeanor, but rejected it based on the advice of counsel, who believed that there could be no conviction for any offense without the victim's testimony. Reversal of his convictions for ineffective assistance requires that Colbert show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceedings' result would have been different.[5]
In his appellate brief, Colbert's counsel concedes that there is no evidence in the record that such a plea offer was made by the state. Since the record does not reflect what advice Colbert's counsel gave him, we are unable to determine whether his counsel had advised him that there could be no conviction without the victim's testimony. With no showing in the record of counsel's deficient performance, we summarily reject Colbert's claim.[6] Moreover, on direct appeal, a defendant may only raise matters that can be determined by reference to the record.[7]
Accordingly, we overrule Colbert's second assignment of error.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Hildebrandt and Winkler, JJ.
[1] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[2] See State v. Evans (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246.
[3] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781; State v. Twyford, 94 Ohio St.3d 340, 354, 2002-Ohio-894,763 N.E.2d 122.
[4] See State v. Oliver (1982), 8 Ohio Misc.2d 8, 456 N.E.2d 591(Painter, J.).
[5] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, accord, State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[6] See State v. Green, 90 Ohio St.3d 352, 375, 2000-Ohio-182,738 N.E.2d 1208, citing State v. Ishmail (1978), 54 Ohio St.2d 402,377 N.E.2d 500, paragraph one of the syllabus (reviewing court cannot decide appeal based on matters not in the record).
[7] See State v. Cooperrider (1983), 4 Ohio St.3d 226, 228,448 N.E.2d 452, State v. Hensley (2001), 145 Ohio App.3d 639, 647,763 N.E.2d 1229, appeal denied (2002), 94 Ohio St.3d 1431,761 N.E.2d 1186.